RICHARD G. P. VALLANCY v. JOHN C. HUNT, Martha Hunt, John Gardiner, and William McDonald.

(145 N. W. 132.)

Replevin — redelivery bond — penalties — requirements — judgment notwithstanding verdict.

A party who desires to avoid the penalties of a redelivery bond in replevin must show a delivery or offer of delivery of the property within a reasonable time, in substantially as good condition as when taken, and without material depreciation in value. Evidence in the case at bar examined, and *held*, that defendants have not shown such a delivery or offer of delivery. Judgment for plaintiff ordered, notwithstanding verdict.

Opinion filed January 20, 1914.

Appeal from the Second Judicial District, Rolette County, *Hon. Frank E. Fisk,* Special Judge.

Reversed.

*Fred E. Harris* and *Knauf & Knauf,* for appellant.

Before a witness can testify as to value of property, he must show himself competent and qualified. There was an entire lack of such showing on the part of the witness Wilkie. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Guiterman v. Liverpool, N. Y. & P. S. S. Co. 83 N. Y. 365.

A witness must show his qualifications before he can give expert testimony. Santa Cruz v. Enright, 95 Cal. 105, 30 Pac. 197; San Diego Land & Town Co. v. Neale, 88 Cal. 50, 11 L.R.A. 604, 25 Pac. 977; Jones v. Mechanics' F. Ins. Co. 36 N. J. L. 29, 13 Am. Rep. 405.

The judgment in the replevin action was a *final* judgment. It was directed by the supreme court, and is in form and substance sufficient. It is binding upon defendants, the Hunts, and is binding upon them and the sureties in this action. Cheatham v. Morrison, 37 S. C. 187, 15 S. E. 924; Craig v. Herring, 80 Ga. 709, 6 S. E. 283; Schott v. Youree, 142 Ill. 233, 31 N. E. 593; Boyd v. Huffaker, 40 Kan. 634, 20 Pac. 459; Johnson v. Mason, 64 N. J. L. 258, 45 Atl. 619.

When a return of personal property is adjudged in an action for its recovery, plaintiff, if he secured possession, must return same in a reasonable time, in the same condition, substantially, as when taken, if he would avoid the penalty. Cobbey, Replevin, § 1182; Parker v. Simonds, 8 Met. 205; Berry v. Hoeffner, 56 Me. 170; Capital Lumbering Co. v. Learned, 36 Or. 544, 78 Am. St. Rep. 792, 59 Pac. 455; Jackson v. Morgan, 167 Ind. 528, 78 N. E. 633; Schott v. Youree, 142 Ill. 233, 31 N. E. 591; Kennedy v. Brown, 21 Kan. 171; O'Loughlin v. Carr, 9 Kan. App. 818, 60 Pac. 478; Hershler v. Reynolds, 22 Iowa, 152; Boyd v. Huffaker, 40 Kan. 634, 18 Pac. 508; Paulson v. Nichols & S. Co. 8 N. D. 606, 80 N. W. 765, 6 N. D. 400, 71 N. W. 136.

In such cases, satisfaction can only be had by a strict compliance with the terms of the undertaking. 2 Black, Judgm. § 586; Cheatham v. Morrison, 37 S. C. 187, 15 S. E. 924.

The property must be redelivered in a safe condition and without deterioration in value. Fair v. Citizens' State Bank, 69 Kan. 353, 105 Am. St. Rep. 168, 76 Pac. 847, 2 Ann. Cas. 960; McPherson v. Acme Lumber Co. 70 Miss. 649, 12 So. 857; George v. Hewlett, 70

Miss. 1, 35 Am. St. Rep. 626, 12 So. 855; Washington Ice Co. v. Webster, 125 U. S. 426, 31 L. ed. 799, 8 Sup. Ct. Rep. 947; Swift v. Barnes, 16 Pick. 194; Leighton v. Brown, 98 Mass. 515; Stevens v. Tuite, 104 Mass. 329; Maguire v. Pan-American Amusement Co. 205 Mass. 64, 137 Am. St. Rep. 422, 91 N. E. 138, 18 Ann. Cas. 110; Hazlett v. Witherspoon, — Miss. —, 25 So. 150; Yelton v. Slinkard, 85 Ind. 190; Berry v. Hoeffner, 56 Me. 170; Parker v. Simonds, 8 Met. 210; Carlon v. Dixon, 14 Or. 293, 12 Pac. 394; Jordan v. La Vine, 15 Or. 329, 15 Pac. 281.

*F. T. Cuthbert & A. R. Smythe* and *H. E. Plymat,* for respondents.

The return or tender back of the property in substantially the same condition as when seized or repossessed is all that the law requires. Fair v. Citizens' State Bank, 69 Kan. 353, 105 Am. St. Rep. 168, 76 Pac. 847, 2 Ann. Cas. 960; 24 Am. & Eng. Enc. Law, 538; Shinn, Replevin, § 679; Horn v. Citizens' Sav. & Commercial Bank, 8 Colo. App. 539, 46 Pac. 838; Jones v. Messenger, 40 Colo. 37, 90 Pac. 64; Three States Lumber Co. v. Blanks, 69 L.R.A. 283, 66 C. C. A. 353, 133 Fed. 479.

It is also true that there must be no deterioration in value. The witnesses who testified upon this point were amply qualified. Bailey v. Walton, 24 S. D. 119, 123 N. W. 701; Cochrane v. National Elevator Co. 20 N. D. 169, 127 N. W. 725; Withey v. Pere Marquette R. Co. 141 Mich. 412, 1 L.R.A.(N.S.) 352, 113 Am. St. Rep. 533, 104 N. W. 773, 7 Ann. Cas. 57, 19 Am. Neg. Rep. 309.

The condition of the property *when taken* must be established, and its condition when *returned.* This is the only way to satisfy this requirement, or to establish value. Fair v. Citizens' State Bank, 69 Kan. 353, 105 Am. St. Rep. 168, 76 Pac. 847, 2 Ann. Cas. 960; Jones v. Messenger, 40 Colo. 37, 90 Pac. 64; Washington Ice Co. v. Webster, 125 U. S. 426, 427, 31 L. ed. 799, 800, 8 Sup. Ct. Rep. 947; Capital Lumbering Co. v. Learned, 36 Or. 544, 78 Am. St. Rep. 792, 59 Pac. 454; George v. Hewlett, 70 Miss. 1, 35 Am. St. Rep. 626, 12 So. 855; Hinkson v. Morrison, 47 Iowa, 167; Yelton v. Slinkard, 85 Ind. 190, 24 Am. & Eng. Enc. Law, 538.

The verdict of the jury is *conclusive* as to all facts upon which there is conflicting evidence. Johnson v. Glidden, 11 S. D. 237, 74 Am. St. Rep. 795, 76 N. W. 933, 5 Am. Neg. Rep. 97; Baxter v. Campbell,

17 S. D. 475, 97 N. W. 386; Bedtkey v. Bedtkey, 15 S. D. 310, 89 N. W. 479; Edgemont Implement Co. v. N. S. Tubbs Sheep Co. 22 S. D. 142, 115 N. W. 1130.

Courts will not disturb verdicts where there is conflicting evidence. Caledonia Gold Min. Co. v. Noonan, 3 Dak. 189, 14 N. W. 426, affirmed in 121 U. S. 393, 30 L. ed. 1061, 7 Sup. Ct. Rep. 911; State ex rel. Morrill v. Massey, 10 N. D. 154, 86 N. W. 225; Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454, approved in Nichols & S. Co. v. Stangler, 7 N. D. 109, 72 N. W. 1089; Axiom Min. Co. v. White, 10 S. D. 202, 72 N. W. 462.

The jury are the exclusive judges of the facts, the evidence, its weight, and of the credibility of the witnesses. Casey v. First Bank, 20 N. D. 211, 126 N. W. 1001; Charles E. Bryant & Co. v. Arnold, 19 S. D. 106, 102 N. W. 303; Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225; Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Black v. Walker, 7 N. D. 414, 75 N. W. 787; Taylor v. Jones, 3 N. D. 235, 55 N. W. 593; Becker v. Duncan, 8 N. D. 600, 80 N. W. 762.

The tender of the property in question was sufficient. Capital Lumbering Co. v. Learned, 36 Or. 544, 78 Am. St. Rep. 792, 59 Pac. 454; Frey v. Drahos, 10 Neb. 594, 7 N. W. 319; Gans v. Woolfolk, 2 Mont. 458; McClellan v. Marshall, 19 Iowa, 561, 87 Am. Dec. 454; 34 Cyc. 1575.

On motion for a directed verdict, the trial court and the Supreme Court will assume the evidence of the plaintiff to be undisputed, and give to it the most favorable construction for a plaintiff possible. Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; John Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164; Northern P. R. Co. v. Vidal, 106 C. C. A. 661, 184 Fed. 707.

Only a tender or return of the property in substantially the same condition and value is required. Leeper, G. & Co. v. First Nat. Bank, 26 Okla. 707, 29 L.R.A.(N.S.) 747, 110 Pac. 655, Ann. Cas. 1912B, 302; Wells, Replevin, § 422; Shinn, Replevin, § 679; Cobbey, Replevin, § 1389; Washington Ice Co. v. Webster, 125 U. S. 426, 31 L. ed. 799, 8 Sup. Ct. Rep. 947; Larabee v. Cook, 8 Kan. App. 776, 61 Pac. 815; Allen v. Fox, 51 N. Y. 562, 10 Am. Rep. 641; Yelton

v. Slinkard, 85 Ind. 190; Edwin v. Cox, 61 Ill. App. 567; Harts v. Wendell, 26 Ill. App. 274; Archer v. Long, 47 S. C. 556, 25 S. E. 84; Reavis v. Horner, 11 Neb. 479, 9 N. W. 643; Johnson v. Mason, 64 N. J. L. 258, 45 Atl. 618; Pickett v. Bridges, 10 Humph. 171; Pabst's Brewing Co. v. Rapid Safety Filter Co. 54 Misc. 305, 105 N. Y. Supp. 962.

The burden of showing error is upon the appellant, since the presumption is that the trial court did not err. Clyde v. Johnson, 4 N. D. 92, 58 N. W. 512; Gould v. Duluth & D. Elevator Co. 3 N. D. 96, 54 N. W. 316; Selvage v. Green, 45 Ind. App. 642, 91 N. E. 357; Faulkner v. Baltimore & O. S. W. R. Co. 44 Ind. App. 441, 89 N. E. 511; C. Scheerer & Co. v. Deming, 154 Cal. 138, 97 Pac. 155; Runyan v. Snyder, 45 Colo. 156, 100 Pac. 420; Linson v. Spaulding, 23 Okla. 254, 108 Pac. 747; Pierce v. Pierce, 52 Wash. 679, 101. Pac. 358.

Error, if it exists, must be shown to have been prejudicial, material and damaging. Whitney v. Brown, 75 Kan. 678, 11 L.R.A.(N.S.) 468, 90 Pac. 277, 12 Ann. Cas. 768; Mageau v. Great Northern R. Co. 103 Minn. 290, 15 L.R.A.(N.S.) 511, 115 N. W. 651, 946, 14 Ann. Cas. 551; Johnson v. Walker, 86 Miss. 757, 1 L.R.A.(N.S.) 470, 109 Am. St. Rep. 733, 39 So. 49; State use of Hart-Parr Co. v. Robb-Lawrence Co. 17 N. D. 257, 16 L.R.A.(N.S.) 227, 115 N. W. 846; Grimestad v. Lofgren, 105 Minn. 286, 17 L.R.A.(N.S.) 990, 127 Am. St. Rep. 566, 117 N. W. 515; Kuhl v. Chamberlain, 140 Iowa, 546, 21 L.R.A.(N.S.) 766, 118 N. W. 776; Madson v. Rutten, 16 N. D. 281, 13 L.R.A.(N.S.) 554, 113 N. W. 872; McClain v. Lewiston Interstate Fair & Racing Asso. 17 Idaho, 63, 25 L.R.A. (N.S.) 691, 104 Pac. 1015, 20 Ann. Cas. 60; Shaw v. Lobe, 58 Wash. 219, 29 L.R.A.(N.S.) 335, 108 Pac. 450; Centofonde v. Camden Coke Co. 78 N. J. L. 662, 27 L.R.A.(N.S.) 1058, 75 Atl. 913; Miller v. Northern P. R. Co. 18 N. D. 19, 118 N. W. 344, 19 Ann. Cas. 1215.

BURKE, J. In the year 1901, the defendants John and Martha Hunt purchased a threshing outfit consisting of engine, separator, blower, stacker, weigher, and self-feeder, from a machinery dealer in Rolla, North Dakota, giving in payment therefor his notes secured upon the said property. Before the maturity of the said notes, they were sold to the plaintiff, Vallancy, who in the fall of 1905 instituted the fore-

closure proceedings and replevined the property under a chattel mortgage. The defendants desired to retain possession of the property pending the action, and furnished a redelivery bond with the defendants Gardiner and McDonald as sureties, conditioned that the defendants Hunt "shall deliver the said property to the plaintiff if such delivery should be adjudged, and for the payment to them of such sum as may for any cause be recovered against the defendants in the action." Under this bond the property was returned to the Hunts and retained by them as hereinafter shown. The action itself reached this court and was decided in favor of Vallancy. See Vallancy v. Hunt, 20 N. D. 579, 34 L.R.A.(N.S.) 473, 129 N. W. 455.

The merits of that case are not, of course, now before us, excepting to observe that the property was directed to be delivered to Vallancy, and a money judgment for costs was also rendered in his favor. The decision was announced in December 31, 1910, and shortly thereafter Mr. Hunt's attorney tendered to the attorney for Mr. Vallancy the sum of $216.40 costs, and later deposited the same to the credit of Mr. Vallancy in the State Bank of Rolla. He also testifies that the said attorney told him that "it would be no use to make a tender of the property, because they would not accept it. They intended to realize upon their rights to recover upon the judgment for money damages."

Although there is some doubt upon the question, we will assume that the tender of the machinery was duly and regularly waived by Vallancy.

The present suit was instituted by Vallancy against the Hunts and their bondsmen to recover upon the redelivery bond hereinbefore mentioned. The defendants answered alleging the tender of the property and the costs as a complete defense against the action. The principal dispute arises over the condition of the threshing outfit at the time of the tender of the same to plaintiff, and upon this question there is considerable conflict. The witnesses for the plaintiff testified that the machine was absolutely worthless. As an example we quote from the testimony of the witness O'Laughlin: "The machinery had been used before the bond was given for the years 1901, 1903, 1904, and 1905. It had been used for four seasons before the commencement of that action. The same threshing outfit was used during the fall of 1905 after this action was commenced, for threshing purposes, and again during the

fall of 1906, and again during the threshing season of 1908, for thresh-ing purposes. Since that time it has been on the Bartley farm, 4 miles south. I have seen the machine out there a number of times. Saw it there in the summer of 1911 four different times. I made an examina-tion at that time; I was engaged in selling similar machinery in this vicinity fourteen years, and handled some about every year. I examined it with some care in 1911, between the 1st and 10th of September, made a careful examination. The separator was covered with chicken manure, the corners or joints of it were grown up with green stuff,— the way a separator will grow up if it stands out three years in one place. The engine was covered with rust; the front wheels were badly dished. The spout was gone off the weigher; a sprocket wheel was gone; the rattle rakes on the feeder; the belts were all gone; there was no tank pump or tank either, and the lubricators were gone off the engine. The flues in the boiler were badly rusted. The machinery was of no practical value. It had no market value at that time."

Upon the other hand, the defendant insisted that the machinery was in as good condition in 1911 as it had been when rebonded in 1905, and took the stand himself to substantiate this claim. He testified in part as follows: "Well, it is in better condition to-day than it was in 1905, and the reasons for that are that up until 1905, I ran it. (Objection sustained.) In 1905 it was all shaken to pieces on account of a small cylinder pulley of the machine when it was shipped here. . . . After 1905 the machinery was in very bad condition on ac-count of it having been run with a pulley wheel too small on the sep-arator, and it had shaken it all to pieces, and the engine had broken also what we call the intermediate gear on the traction in such a condition that we couldn't move it home; that is, we moved it on the farm, but not to its usual place, and it was in that condition at the time it was replevined. In 1906 I hired a man for three months during the sum-mer, a mechanic, and put him to work on it, replacing everything that needed replacing, and fixing the machine over so it was practically in better shape for threshing than it ever was before. I will correct that by saying it was in a whole lot better condition. . . . I rebuilt the machine; made it 50 per cent over from what it was in 1905. . . . The reason it is in better condition now is, as I said before, it had been all shaken to pieces in 1905, and after that it was replevined, and it has

only been run two seasons since that. In those two seasons it ran a whole lot better than it ever did before. . . . The wood is not as strong, not as sound; there are a number of parts of the machine that are not as strong as they were, not as sound as they were, which happened by the weather conditions; still it is in better shape even than before; and there are some few things that have been taken away from the machine; some of them that were taken and stored here; my brother has some of them; that would make it look as though it had been robbed; those are things which were taken and placed away for safe-keeping; and there are a few joints that are not as good as they were at that time, but generally speaking the machine is worth the same amount. . . . It is worth $2,000." Upon cross-examination he further testifies: "Before I used the threshing (machine) in 1906, I placed some repairs upon it; rebuilt the machine or hired it done. It cost me about $350; that was after the other Vallancy action was commenced. . . . The machine has had a number of fixings placed on it since Vallancy started that action, and placed there by me. The repairs and the man's labor cost me about $350. The castings and things didn't cost so much; it was principally woodwork and the man's work fixing it over. Some of the joints are not in the same condition now as in 1905,—that it is rotted to some extent. They were rotted to some extent in the fall of 1908. I used it that fall after the trial of the other action. After I got through using it that fall, it was left down at Bartley's place. It has remained standing down there in the yard ever since. . . . I have made no repairs on the separator since quitting threshing with it in the fall of 1908, and it has been standing out, as far as I know, in the same place all the time since. I haven't used it since then. I heard LaFrance testify about the flues being rusted. What he said was true. I heard him state the condition of the joints of the separator. They are not so bad as he represented it to be."

Another witness testified that Gardiner, one of the bondsmen, and a defendant in this action, had removed from the machine the spout that carried the grain from the elevator to the wagons and put it upon his own threshing rig. Other witnesses for the defendant testified that the threshing rig was worth about the sum of $1,800, but as to two or three of those witnesses it is extremely doubtful if their evidence was

properly received, because the examination of the rig was not sufficient for an opinion.

Thus, the witness Wilkie testifies as to the value of the rig as follows:

I was on the place the day before we come here. I went right by the rig and looked at it.   .   .   .

Q. During those visits have you examined the condition of the machinery?

A. Well, not exactly examined it to know what it would be worth; I have seen it standing there and looked at it now and again.

Q. That is, when you say you looked at it, you mean you have been up to it?

A. Went up there myself.

Q. To where the machinery was?

A. Yes.

Q. That was during the past summer?

A. Yes.

Q. And then you were out there again on the 9th of this month?

A. Yes.

Q. Well, at those trips that you were out there, were you close to the machinery, close so you could see the condition it was in?

A. Yes, I was close.

Cross-examination by plaintiff to test his knowledge.

Q. You didn't examine this machinery with the intention of finding out its value?

A. No.

Q. You didn't make any close examination of the machinery?

A. No.

Q. You didn't open it up and look into it at any place, did you?

A. Well, a fellow could look in without opening it, by walking around.

Q. Casually looked at it as you walked past it?

A. Yes, and looked inside of it.

Q. Did you make a careful examination to see whether everything was all right in it or not?

A. No; I did not.

Q. Did you make a careful examination to see whether there was rust on any of the parts?

A. Well, there is often rust on new things; you can't tell much by rust.

Q. You only saw it and walked around close to it; and when was it you walked around close to it and looked at it?

A. I think sometime in July in the summer; I am not quite sure.

Question by defendant. Now, from your knowledge of the values of machinery, and from your examination of this machinery that you referred to, I ask you to state what the reasonable market value would be for that rig complete in this vicinity? Objected to. Overruled.

A. Well, I don't really know. . . .

Q. Just listen to the question. Do you know, and have you known, the value, the market values of threshing machines, new and second-hand, from your knowledge as a thresher and purchaser of machines, and what you have seen bought and sold in Rolette county during the last year?

A. I have.

Q. Now, from that knowledge, and from your examination of this machinery in question, can you state the reasonable market value of it? Objected to and overruled.

A. A couple of thousand or over, I should think.

Cross-examination.

A. I have seen no machinery like this in question sold during the past two years. I have seen some in the same condition. I haven't examined the condition of this machinery so as to know the joints and the fixings of that kind upon it. I don't know whether the joints and boards were rotted or not. I did not examine it that close. I don't know whether the flues in the engine are badly rusted or not. I didn't examine them very close. . . . It is a fact that I failed to make a careful examination of this machinery. I didn't ever examine it for the purpose of testifying as to its value. Just noted it casually as I went there, and that is what I told you the other day. The fact that the boards and belts on the separator were rotted, and that the return flues in the engine were badly rusted, would make a difference in the market or sale value of the machinery at this time. It ought to have some market value at this time. I know it has some sale value at this time. I would not be willing to pay $1,600 for it.

We have set out rather more of the testimony than necessary, to show its unsatisfactory nature. At the close of all of the testimony, plaintiff moved the court for a directed verdict upon the grounds that the undisputed evidence showed the threshing rig to be in a different condition and of less value than it had been in 1905, when rebonded by the defendants. This motion was denied, and forms the basis of this appeal.

There is not much dispute upon the legal proposition that, in order to avoid the terms of a bond, the defendants must show a return, or offer to return, of the property rebonded in substantially the same condition, and without material deterioration in value. See Cobbey, Replevin, § 1184; Note to Three States Lumber Co. v. Blanks, 69 L.R.A. at page 286; Gibbs v. Bartlett, 2 Watts & S. 34; Nichols & S. Co. v. Paulson, 10 N. D. 440, 87 N. W. 977; Jackson v. Morgan, 167 Ind. 528, 78 N. E. 633; Fair v. Citizens' State Bank, 69 Kan. 353, 105 Am. St. Rep. 168, 76 Pac. 847, 2 Ann. Cas. 960; Schott v. Youree, 41 Ill. App. 476, 142 Ill. 233, 31 N. E. 591; McPherson v. Acme Lumber Co. 70 Miss. 649, 12 So. 857; Washington Ice Co. v. Webster, 125 U. S. 426, 31 L. ed. 799, 8 Sup. Ct. Rep. 947. From the Gibbs v. Bartlett Case, 2 Watts & S. 34, we quote: "It would be anything but an act of justice to permit a person who has wrongfully deprived another of his goods, and retained them in his possession until they were nearly destroyed by time and use, afterwards, when judgment was rendered against him for his wrongful act, to save a forfeiture of the bond by an offer to return the article in its depreciated condition. Nor can the sureties be placed in any better situation than the principal."

It is conceded that the question as to whether or not the machinery was in substantially the same condition and value in 1911 as it had been in 1905 was a question of fact for the jury, if a conflict in the evidence existed that would warrant reasonable minds in arriving at different conclusions upon the question. From an examination of the evidence, however, we have reached the conclusion that the undisputed evidence shows the machinery to be in a substantially different condition after the lapse of five years. True, there is some evidence that, owing to repairs made in 1906, the value of the machinery had not been depreciated, but there is no evidence that the machinery is in the same condition substantially as it was at the time it was rebonded by the defendants. The plaintiff was entitled to the rig in substantially the

same condition that it was when taken from him, and this obligation is not met by tendering to him the threshing machine nearly six years older, after it has stood out without shelter of any kind, and from which substantial parts have been taken, even though some witnesses have testified that it is equally valuable at the present time. The repairs may not have been desired by the plaintiff, and they furnish further evidence that the machine was not in the same condition. If the repairs were minor, it probably would not make much difference, but when they are to replace the natural deterioration of a threshing machine which has stood exposed to the elements for nearly six years, they cannot be called minor repairs. Those repairs, moreover, were made in 1906, some five years before the machine was tendered in satisfaction of the bond, since which time the threshing rig had been operated at least two years. Having reached the conclusion that the trial court had erred in refusing a directed verdict for the plaintiff, it becomes unnecessary to pass upon the other errors assigned. The trial court will order the entry of a judgment notwithstanding the verdict, in favor of the plaintiff, for the relief demanded.