## KUNZ v. NELSON et al.

No. 5912. Decided February 23, 1938. (76 P. 2d 577.)

186

*Irvine, Skeen & Thurman* and *A. U. Miner*, all of Salt Lake City, for appellants.

*Gaylen S. Young*, of Salt Lake City, for respondent.

WOLFE, Justice.

This is an appeal from a judgment entered in pursuance of a jury verdict for damages found due because of the claimed withholding by defendants of the plaintiff lessee's share of certain crops. By a lease, dated April 11, 1936, Ella F. Nelson leased to R. L. and Morris Q. Kunz her farm containing between sixty and seventy acres. Then follows a specific description, after which comes the following language:

"This lease does not include the pasture land in the bottoms nor the lot on which the house stands; neither are any building, silos nor grounds around buildings or silos included. The cabin the lessee may use to live in during the life of this lease. *Lessee to pay for all electric power used.* The lessee agrees to irrigate shrubs and trees by the house.

"The lessee agrees to cultivate and harvest the crops raised on said farm in husbandlike manner. *All crops harvested to be stored on said farm unless otherwise agreed to by the lessor.* No smoking in or around buildings, hay, grain or straw.

"The lessee may use all implements on the farm necessary to procure and harvest the crops; ordinary wear and tear excepted; *the lessee agrees to be liable for all breakage caused by negligence.* It is understood there is no grain drill, nor marker on the farm. No machinery or implements to be taken away.

"*The lessee shall receive one half (1-2) of all crops harvested; it is understood that the seed and costs of threshing shall be deducted before dividing the grain.*

"The lessee further agrees to haul on farm manure in sheds and around barn. All cockleburrs are to be kept off portions leased, by the lessee.

"*This lease to terminate October 15, 1936.*"

The italicized portions are the parts of the lease which have a more direct bearing on the issues involved. Morris

Q. Kunz assigned his interest in the lease to his brother, the plaintiff, on July 3, 1936. The lessees went into possession and planted about twenty acres to barley and wheat, harrowed the alfalfa and irrigated. The first crop of hay, consisting of about thirty-six loads, was divided and plaintiff removed his share without protest. Early in August the second crop of hay was measured off by Mr. Nelson and plaintiff. Plaintiff sold three and one-half tons of his share of this crop, after which the balers came and baled the remainder of his portion up to 126 bales. At this point Mr. Nelson and an officer came and admonished plaintiff not to remove anything from the place. It appeared by the evidence at the trial that Nelson, who uncontrovertedly represented his wife, the owner of the land and lessor, asked Kunz not to move his share of the hay because "uncertainties had arisen." He claimed at the trial that a vise was broken, that the carrier on the binder was broken off, and that $2.50 was owing on the power bill. He was apparently holding the crops until a settlement of these items was made. But at the time Nelson told Kunz not to remove anything from the place, according to the latter, Nelson would not state the reason. Testifies Kunz: "I asked him what the idea was, what his reasons were, and what he had in mind. He says he wasn't quite ready to tell me, I would find out soon enough." The same evening Kunz sent out a truck to get the baled hay, but the Nelsons refused to permit it to be removed. The two men who accompanied the truck to get the hay testified that an officer told them to get off the place or he would put them in jail. On September 12th, Young, counsel for plaintiff, wrote Nelson, stating that Kunz would carry to completion the lease with Mrs. Nelson, but that he, Young, was to receive all of Kunz's one-half of the crops. The letter stated, "I will appreciate it if you will get together with Mr. Kunz and make a division of the crops already harvested so I can dispose of the same. I realize that the lease provides that the crops are to be stored on the farm. This I understand was meant to be until a division was made. At any rate, what-

ever construction you may take of the lease, I am asking you now as a representative of your wife to kindly let me have hauled off from the farm ½ of the crops that have been harvested and are in proper condition to be divided." After the letter was written, Mr. Young called over the telephone and came down to the farm to see Nelson to see if a division could be had. Nelson said "no." Nelson had the grain threshed and retained possession. Both the Nelsons evidently took the position that the lease should be construed to mean that the crops should be stored on the farm until the termination of the lease, which was October 15th; also that she had a lien on Kunz's half of the crop until a settlement of claimed damages and payment of the power bill. Kunz took the position that the crops were to be stored on the farm "only pending a division and that such division should be made expeditiously after harvesting."

The lease did not say the crops were to be stored on the premises until October 15th. The lease terminated October 15th. It did say that "all crops harvested to be stored on said farm unless otherwise agreed to by lessor." We see no reason why the general rule that division should be made within a reasonable time is any way modified by the language of the lease. We think the provision above mentioned requires the crops to remain on the land until division and that the landlord or the tenant could demand division within a reasonable time. *Caruthers* v. *Williams,* 58 Mo. App. 100. A reasonable time would be with a view to permit the tenant to convert his share of crops into cash in order to meet current obligations. If Mrs. Nelson then had a lien for the charges claimed, a retention of a comparatively small portion of Kunz's share would have protected her. As to whether she had a lien was not argued and we do not decide it. In passing, attention is called to the following cases which hold that the right of lien in statutory and only exists to the extent of and for the claims mentioned in the statute: *Wilson* v. *Stewart,* 69 Ala. 302; *Few* v. *Mitchell,* 80 Ark. 243, 96 S. W. 983. There is nothing to show that

the Nelsons gave Kunz a statement of the items they claimed for damages, etc. From their evidence on the stand, their disposition seemed to be to hold the crops until there was an "accounting" or a "settlement," but, apparently, being in a strategic economic position, they felt that he must make the first move toward settlement. This seemed to be the situation when Kunz, evidently concluding from the circumstances and advice of counsel that he was illegally held out of possession of his share, brought this action. It was started by service of summons on September 28th and complaint filed on October 7, 1936. The charging part of the complaint reads as follows:

"3. That on or about the 24th day of September, 1936 in Salt Lake County, Utah, the defendants then and there being in possession of said goods, unlawfully withheld, and do now unlawfully withhold, the same from the plaintiff and have converted the same to their own use to the damage of the plaintiff in the sum of $483.00."

The prayer reads as follows:

"Wherefore plaintiff prays for judgment against the defendants and each of them *for the immediate possession of the above described personal property and for damages for its detention;* and in case possession of said property is not surrendered to plaintiff then for the sum of $483.00, being the value thereof, for costs of this suit and for such other relief as to the court may seem proper in the premises." (Italics added.)

The complaint sounds in replevin according to its prayer, but the court seemingly instructed the jury on the theory that it was an action for damages for conversion, although from the evidence it appeared that some of plaintiff's share of the crops was recoverable in kind at the time of the verdict. The parties treated it as a replevin action. Mr. Young stated to the court, "We are suing, of course, for the recovery of the wheat or its value." And again, "We are either entitled to the return of the property or its value or we are not." In the case of *Larsen* v. *Ryan,* 54 Utah 250, 180 P. 178, 180, Mr. Justice Frick states rather

ex tempore that the action for damages "under the circumstances, was the only relief to which Larsen was entitled in view that he never attempted to obtain possession of the property by filing the necessary affidavit," etc. A moment's reflection and a glance at the statutes on claim and delivery, Rev. St. 1933, 104-16-1 et seq., will reveal that claim and delivery is only ancillary to an action for possession in order to retain or obtain possession pending the trying out of the rights by the court. While the use of the mechanism of claim and delivery would, if properly ancillary, stamp the action as one of replevin and not of conversion, the absence of such use cannot stamp a possessory action as one for conversion. This action must be treated as for possession and not for conversion.

The defendants next contend that there was no evidence of withholding for the reason that up until the 15th of October plaintiff, being in possession of the premises on which the crops were stored, had as much possession of them as had defendants. The reasoning is specious. If I have the right upon division to take my share of crops from ■ the place and the other party refuses to let me convey them from the place after division or refuses to divide if required to do so in order that I may carry off my share, it amounts to a withholding of possession. I may come on the premises where I have the right to be and sadly survey my property, but, if I am restrained from disposing of it when I have that right, there is a conversion—a withholding of my right to assume jurisdiction or disposal inconsistent with my ownership. Moreover, as to the second crop of hay there appears to have been, by the Nelsons, a recognition of the right of Kunz to the possession. It had been divided. *Jordon v. Bryan,* 103 N. C. 59, 9 S. E. 135. We think there was evidence to support a finding of a wrongful withholding of possession.

As to the question of whether the court was correct after verdict in rendering a judgment for the value only, the action being one for possession and not for conversion: Orig-

inally the common law regarding replevin was very strict. It did not permit of obtaining the value of the article withheld, even though it transpired that the article had been destroyed and could not be returned. This was softened by judicial decision or changed by statute. Section 104-30-11, R. S. Utah 1933, provides that, "in an action to recover the possession of personal property, judgment for the plaintiff *may* be for the possession, or the value thereof *in case the delivery cannot be had,* and damages for the detention." (Italics added.) An action for possession cannot ordinarily be transmuted into an action of conversion unless both parties treat it as such. Even when only the value need be given it is not because the nature of the action is changed, but because, by reason of the fact that the article cannot be returned, value is substituted for the property. *Dolinsky* v. *Williams,* 56 Utah 186, 189 P. 873. This is because a claimant of property, sincerely believing it to be his, need not run the risk in holding it that he can be compelled to buy it from the other in case it is found to be the property of the other. 23 R. C. L. 904; *Allen* v. *Fox,* 1873 51 N. Y. 562, 10 Am. Rep. 641; *Dwight* v. *Enos,* 9 N. Y. 470; *Fitzhugh* v. *Wiman,* 9 N. Y. 559. We shall see, however, that the rule is not inflexible.

An examination of the verdict shows that it fits a submission of the case on the theory of replevin. The verdict found the "issues in favor of plaintiff and against defendants," and then set out an itemization of amounts of various crops detained with their values. While an alternative verdict is quite in order, a general verdict, finding for the plaintiff and the value of the property, is sufficient to support a judgment in the alternative for a return of the property or its value. *Hobbs* v. *Clark,* 53 Ark. 411, 14 S. W. 652, 9 L. R. A. 526; *Etchepare* v. *Aguirre,* 91 Cal. 288, 27 P. 668, 929, 25 Am. St. Rep. 180. The verdict could not decree a return. The judgment would decree a return of those articles returnable and decree judgment for the balance according to the values found by the jury. The

judgment in this case failed to do that but was for the value only. Ordinarily, in a replevin suit, the judgment should be for the return of the property or for its value in case it is not returned and damages for its detention. But, as we shall later see, the rule is not inflexible. The very wording of section 104-30-11 is that judgment "may be" (not "shall be") "for the possession," etc.

It has been consistently held that the judgment does not need to be in the alternative where it appears that the property cannot be returned. *Dolinsky* v. *Williams*, supra; 23 R. C. L. 939; *Larson* v. *Hanson*, 26 N. D. 406, 144 N. W. 681, 51 L. R. A., N. S., 655. And, where it appears that the property is returnable and the judgment provides only for the return of the property and not its value in case it is not delivered, it has been held that the judgment is good if the prevailing party makes no objection because the value is for his own benefit and he may waive it if he chooses and take the judgment merely for the return of the property. *Thompson* v. *Scheid*, 39 Minn. 102, 38 N. W. 801, 12 Am. St. Rep. 619; *Peterson* v. *First National Bank of Bay Point*, 101 Cal. App. 532, 281 P. 1104; *Stroud* v. *Morton*, 70 Mo. App. 647; *Central Missouri Trust Co.* v. *Wulfert*, 198 Mo. App. 85, 199 S. W. 724; *Wheeler* v. *Jones*, 16 Mont. 87, 40 P. 77.

This would seem to be in accordance with the general principle that in replevin actions a judgment is satisfied by a return of the property in as good condition as when detained. But some cases make the bland statement that the alternative judgment is for the benefit of the party prevailing and that he can waive the defect of its ▮ not being in the alternative. It must be admitted that in all these cases which have been examined by us where this statement was made the judgment omitted the value arm of the alternative and the goods were intact so that they could be returned. And the prevailing party was willing to accept their return, *Whetmore* v. *Rupe*, 65 Cal. 237, 3 P. 851; *Farmers' Loan & Trust Co.* v. *Commercial Bank of*

*Racine,* 15 Wis. 424, 82 Am. Dec. 689; *Kloety* v. *Delles,* 45 Wis. 484; but by *Smith* v. *Coolbaugh,* 19 Wis. 106, the judgment cannot be for the value only where the party claims, a return, *Caldwell* v. *Ryan,* 210 Mo. 17, 108 S. W. 533, 124 Am. St. Rep. 717, 14 Ann. Cas. 314. In *Griffith* v. *Reddick,* 41 Cal. App. 458, 182 P. 984, 985, it was held:

"The Code provision (Code Civ. Proc. §§ 627, 667) entitling the prevailing party in proceedings under claim and delivery to an alternative judgment for the value of the property in case a return cannot be had, is solely for the benefit of the prevailing party. It does not, where the judgment is for a redelivery to the defendant, or for the value if a return of the property cannot be had, give to the plaintiff the privilege of either redelivery or payment of the value, at his option."

The following propositions seem to be established:

(1) A judgment on a statutory action for possession should provide for the return or in case the return cannot be had for the value and for the damages ▮ due to detention. Ordinarily, either party has the right to insist that it be so rendered.

(2) Where it appears at the trial that the property cannot be returned or has so deteriorated in quality or value as to be practically worthless, the judgment need only provide for the value at the time of the taking and damages due to detention. We deem it unnecessary to determine at this time whether, if some of the goods or articles, but not all, could be returned in substantially the same condition as they were when taken, the losing party could satisfy the judgment or discharge a redelivery bond pro tanto by tendering such part or such articles. Nor do we deem it advisable now in view of a statute such as ours to determine whether the judgment must or could set out the value of separate articles so that the prevailing party could accept some and refuse others which had substantially deteriorated and have execution for the value of those refused or those lost or destroyed. See *Hallidie Machinery Co.* v. *Whidbey Island Sand & Gravel Co.,* 73 Wash. 403, 131 P. 1156, at

page 1158, 45 L. R. A., N. S., 40. What is apparent is that in every case where the property is available for return the prevailing party may insist upon its return and for damages due to depreciation which may be included in the damages for detention.

But it is equally true (3) that, where judgment is rendered for the articles or their value and they cannot be returned in substantially the same condition they were in at the time of the taking, the prevailing party may refuse to take them and sue on the redelivery bond or, in such a case as the one at bar, execute on the judgment for the value. *Wallace* v. *Cox*, 92 Neb. 354, 138 N. W. 578, Ann. Cas. 1913E, 1158; *Id.*, 94 Neb. 194, 142 N. W. 891, 47 L. R. A., N. S., 835, Ann. Cas. 1914D, 109; *Whetmore* v. *Rupe*, 65 Cal. 237, 3 P. 851; *De Thomas* v. *Witherby*, 61 Cal. 92, 44 Am. Rep. 542; *Vallancy* v. *Hunt*, 26 N. D. 611, 145 N. W. 132; *Brown Garage Co.* v. *Graben Motor Co.*, 200 Iowa 913, 205 N. W. 841; *Yellow Mfg. Acceptance Corp.* v. *Finnell,* 167 Okl. 653, 31 P. 2d 884; *J. E. Pauls* v. *Mundine,* 37 Tex. Civ. App. 601, 85 S. W. 43, where it was held that the prevailing party in an action to reclaim machinery could refuse to accept part thereof even though the judgment specified the value of the various parts, certainly this would be true where the parts missing were substantial and the whole was a unit. But see *Leeper, Graves & Co.* v. *First Nat. Bank of Hobart*, 26 Okl. 707, 110 P. 655, 29 L. R. A., N. S., 747, Ann. Cas. 1912B, 302, in which it was held that, where the whole is practically intact and the small parts missing could be easily replaced, the prevailing party could be required to accept the articles and recoup on the bond for the missing parts. In *Lierly* v. *Motor Mfg. Co.*, 174 Okl. 153, 50 P. 2d 156, it was held that the delivery of the article still having substantial value should be a satisfaction pro tanto and the liability of the surety was limited to the difference between the value of the automobile when taken and the value when returned. But *Yellow Mfg. Acceptance Corp.* v. *Finnell,* supra, seems contra. Certainly, if the prevailing

party desired the article, he could recover the depreciation. If there was no bond, as in the instant case, the only method of recourse would be against the defendant in a separate suit, the value arm of the alternative judgment being for the whole of the article. *Burkitt* v. *Vail,* 123 Or. 461, 238 P. 1114, 260 P. 1014; *Fair* v. *Citizens' State Bank,* 69 Kan. 353, 76 P. 847, 105 Am. St. Rep. 168, 2 Ann. Cas. 960.

(4) That the apparent and real contradictions in the decisions and the qualifications, exceptions, and departures from the rule (1) above, revealed by an examination of numerous cases and notes may be explained as a struggle by the courts to serve the paramount rule of justice that the party wronged should be put in the position he was before the wrong as nearly as may be. Many of these decisions are justified as an attempt to consummate this principle. Cases involving as varied sorts of property as stocks, bonds, slaves (before the Civil War), workmen's tools, perishable fruit, rare books, heirlooms, livestock, machinery and its parts, "deteriorable" crops, etc., or involving one or more articles whose condition at the time of the judgment might or might not be ascertained, or involving in a single suit some articles destroyed or unreturnable, some articles substantially depreciated, and some articles in substantially the same condition in which taken, or involving a conglomerate, such as a secondhand store full of miscellaneous chattels, presented varying situations which might not permit of the application of the simple formula under (1) above without permitting further remedy on the bond or in a separate action or requiring certain issues not ordinarily present to be tried in the replevin action. *Citizens' National Bank* v. *Oldham,* 136 Mass. 515; *Yelton* v. *Slinkard,* 85 Ind. 190; *Washington Ice Co.* v. *Webster,* 125 U. S. 426, 8 S. Ct. 947, 31 L. Ed. 799; Note, 2 Ann. Cas. 961; *Newton* v. *Round,* 109 Iowa 286, 80 N. W. 391; *Stevens* v. *Tuite,* 104 Mass. 328; Note, Ann. Cas. 1916A, 622; *Chesnut* v. *Sales,* 49 Mont. 318, 141 P. 986, 52 L. R. A., N. S., 1199, Ann. Cas. 1916A, 620; *Walrus Mfg. Co.* v. *Quackenbush,* 128 Kan. 474, 279 P. 3.

These situations were further complicated by the general rules that the prevailing party was not required to take articles depreciated during detention in satisfaction of the judgment and by its converse rule that where the articles were in substantially the same condition as when re-received the losing party could avoid payment of the money judgment by tendering the articles; and by the other dual rule that a party entitled to possession was entitled to the articles regardless of their condition if he wanted them, plus damages for their depreciation, and its converse rule that the losing party could not by tendering the amount of the money judgment retain the articles. The case of rare books or heirlooms illustrates the latter point. Some of these special situations might justify a judgment for value only where the prevailing party waived the other arm of the judgment, even though the property was extant and in some cases perhaps even if it were not depreciated. We have no need, nor would it be possible, now to specify situations in which this could be done. It is better left for the cases to present their own exigencies.

From the above propositions it can be concluded: In the instant case the judgment should have been in the alternative unless it appeared that the hay and grain could not be returned or could not be returned in substantially the same condition and plaintiff was willing to waive possession, in which case a judgment for the value only, together with interest (use or rental value instead of interest ▉▉▉ in cases where the articles were not trade commodities but had particular use to the prevailing party, such as workmen's tools), would have been permissible. But, if an alternative judgment had been rendered and it had turned out that the defendants could not return all of the property in substantially the same condition as when withheld, or could return only some and those in a depreciated condition, the plaintiff would not have had to accept any of them. If a controversy arose as to whether or not the condition had changed and plaintiff refused to take them and

defendant insisted that he take them and satisfy the judgment, perhaps, since there was no bond to sue on by which that issue could be tried out, some separate proceeding might be had to try such issue—what kind it is not necessary to say. Since this case is still pending, and for other reasons must be reversed, we may provide by our order for a way to settle any such issue. The record is not clear as to whether or not the grain can be returned. There was some evidence that the quality of the hay has deteriorated and that its quantity has decreased by sheep eating it. The conditions in these regards may have since been aggravated. We think it would not comport with good sense to permit a retrial to take place and an alternative judgment entered only to find that plaintiff, if he again prevails, could refuse to take the goods either pro tanto or as a whole because of some missing and some being depreciated and have that issue still to settle. We think the lower court in the retrial should determine what crops still remain in possession of the defendants and their condition; and, if there is substantial depreciation in any of the crops and the plaintiff is still willing to take the value, that such willingness be indicated at the trial and, if plaintiff prevails, a judgment then be given for the value as at the time of the taking plus interest—there being nothing in this case that requires an application of the rule which permits the use or rental value of the articles during detention.

And, indeed, in an action for possession, we see no good reason why, wherever it would not work an injustice or hardship on the party out of possession, the inquiry should not be made into the returnability and condition of the property and the question determined whether, if such party prevails, he should or should not be required to accept the property with damages for detention. Findings thus made might be res adjudicata on the bondsmen if there was a redelivery bond, but multiplicity of action would be prevented. No set rule should be laid down. The matter should be left largely to the trial court's discretion and the circumstances

of the case. Where the property during the trial was available to the party out of possession for inspection and the deterioration, if any, discoverable, the issues as to its condition might, with profit, be settled in the possessory action. Where, on the other hand, the property was secreted or removed by the one retaining it or the situation such as to place a hardship on the one out of possession to introduce adequate proof as to its condition at the time of the trial, the question of whether the losing party could satisfy a judgment for possession by the tendering of the property on the assumption that it was in substantially the same condition as when first detained might well be left to be settled in a suit against the bondsmen or, if no bond, in some other appropriate manner, if controversy arose as to the condition after judgment.

We now come to the question, Was the court in error in not furnishing the jury with written instructions? It appears that the judge read the instructions from notes and that counsel for defendants thought he was reading instructions reduced to writing which were to be furnished to the jury. When written instructions were not furnished, objection was registered by counsel for defendants. No written instructions except the printed stock instructions appear in the record. Section 104-24-14, subsection (4), R. S. 1933, reads: "(4) When the evidence is concluded the court shall instruct the jury in writing upon the law applicable to the case, and, if it states the evidence in the case, it must inform the jury that they are the exclusive judges of all questions of fact; provided, that with the consent of both parties entered in the minutes, the court may instruct the jury orally, in which case the instructions shall be taken down by the court reporter."

Neither party has cited any cases as to whether failure to give instructions in writing over objection of counsel presents a case of prejudice in law or still leaves open the inquiry as to whether there has been in fact prejudice. In

consequence, we have made our own research in this regard as well as in regard to the other phases of this case. The statute has a mandatory tone. We think the failure to reduce all substantial instructions to writing for the use of the jury in the jury room is itself reversible error and that we cannot inquire as to whether it in fact was actually prejudicial. It will be irrebuttably presumed to be prejudicial. The requirement to instruct in writing does not mean for the purposes of the record only, but for the purposes of use by the jury in the jury room and in the hope that the instructions will be more carefully prepared. If it were only for the record, the court reporter could take down the oral instructions and transcribe them. It may be that the requirement is one which may be waived by conduct other than consent by the parties entered in the minutes. We need not decide that question because in this case there was no waiver of the requirement but a specific objection made. *Chapman* v. *Rose*, 135 Wash. 248, 237 P. 708; *Smith* v. *Bowers*, 82 Wash. 80, 143 P. 316; *State* v. *Jensen*, 114 Wash. 401, 195 P. 238. But in Washington the statute did not expressly say how the requirement could be waived as does our statute. In the case of *Forzen* v. *Hurd*, 20 N. D. 42, 126 N. W. 224, it is intimated that under a statute like ours the waiver must be by consent entered in the minutes. In Colorado it has been held that failure to instruct in writing is reversible error, the statute specifying that the "instructions shall be in writing and signed by the judge." Code Civ. Proc. Colo. § 205, subd. 6. *Tyler* v. *McKenzie*, 43 Colo. 233, 95 P. 943; *Brown* v. *Crawford*, 2 Colo. App. 235, 29 P. 1137; *Gile* v. *People*, 1 Colo. 60; *Montelius* v. *Atherton*, 6 Colo. 224; *Lee* v. *Stahl*, 9 Colo. 208, 11 P. 77; *Keith* v. *Wells*, 14 Colo. 321, 23 P. 991; *Wettengel* v. *City of Denver*, 20 Colo. 552, 39 P. 343.

In Kansas the statute reads:

"The court shall give general instructions to the jury, which shall be in writing, and be numbered and signed by the judge, if required by either party." Rev. St. Kan. 1935, 60-2909.

It was held that, in the absence of a request, it was not error to instruct orally. But it was held in *Molt* v. *Hover*, 40 Ind. App. 552, 82 N. E. 535, that, where request was timely made, it was error not to reduce the instructions to writing. Likewise *Hardin* v. *Helton*, 50 Ind. 319, at page 324; *Strattan* v. *Paul*, 10 Iowa 139; *Miller* v. *Noell*, 193 Ky. 659, at page 662, 237 S. W. 373; *Frye* v. *Shehee*, 55 Ga. 208, at page 215; *Hardy* v. *Turney*, 9 Ohio St. 400; *Patterson* v. *Ball*, 19 Wis. 243.

Certainly, the duty of the court to give instructions in writing under a statute which makes it mandatory, except on condition that the parties consent that they be given orally, is at least as strong as under a statute which makes it mandatory to give written instructions if one party requests it. In *Henderson* v. *Kessel*, 93 W. Va. 60, at page 75, 116 S. E. 68, 74, defendant complained that the lower court gave oral instructions contrary to the statute. The court stated:

"The practices prevailing in some of the trial courts of this state which prompted the enactment of this statute are well known to the members of the bar. Whether it be wise or otherwise is not for us to say. It is the law governing all courts in this state in the trial of cases before a jury. To hold it merely directory would be in effect to repeal it. Before it was enacted, the courts had the right to do what it says now they shall do, and it clearly meant to give the trial court no right to give oral instructions governing the matters in issue. It made no difference that what the court said in this case was at the time reduced to shorthand notes by a reporter. Counsel should be given the right accorded by the statute of reading the instructions before they are given. Other states have similar statutes, and their courts hold this view. See *Bradway* v. *Waddell*, 95 Ind. 170; *Illinois, etc., R. Co.* v. *Hammer*, 85 Ill. 526; *Swartwout* v. *Michigan Air Line R. R. Co.*, 24 Mich. 389; *Doggett* v. *Jordan*, 2 Fla. 541; *Columbia Veneer & Box Co.* v. *Lumber Co.*, 99 Tenn. 122, 41 S. W. 351. It was therefore error to give such oral instructions."

*Sharman* v. *Newsome & Johnston*, 46 Tex. Civ. App. 111, 101 S. W. 1020; *Hughes* v. *Eldorado Coal & Min. Co.*, 197 Ill. App. 259, at page 266; *City of Atchison* v. *Jansen*, 21 Kan. 560, and cases cited therein.

We regret that in a case such as this, where by slight accommodations the matters could have been settled by the parties and where there has been already too much litigation, we must reverse the judgment. But in this court we are confronted with the necessity of laying down correct legal propositions, and, when parties stand on their extreme or technical rights, we face the unpleasant task of reversing a judgment even when there has been already far too much litigation over trivialities or for the amount involved.

The judgment of the lower court is reversed and the cause remanded, with instructions to grant a new trial to be governed by the principles herein set out. Costs to appellants.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.