The People of the State of Illinois, Plaintiff-Appellee, *v.* Eddie Lee Anthony, Defendant-Appellant.

(No. 73-263;

Third District—July 25, 1975.

*Rehearing denied August 18, 1975.*

James Geis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (Ira Goldstein, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

On March 17, 1971, while a prisoner at the State penitentiary, defendant, Eddie Lee Anthony, wielding a razor, attacked, cut and injured four guards and others. He was subsequently indicted and tried on four counts of attempt murder to which he entered pleas of insanity. The jury found him guilty on the first and fourth counts of the indictment and not guilty on the others. Judgment was entered on the verdicts, and defendant was thereupon sentenced to two concurrent terms of not less than 6 not more than 12 years to run consecutively to a term he was serving at the time of the crime.

At the trial, the State called two psychiatrists who expressed the opinion that defendant suffered from personality disorders rather than mental defects; defendant, as his sole witness, called Dr. Douglas Foster, also a psychiatrist, who testified that in his opinion defendant suffered from schizophrenia and lacked substantial capacity at the time of his acts to appreciate the criminality of his conduct.

After about 3 days of trial, the jury retired to deliberate at 2:40 P.M. on November 16, 1972. At 5:45 P.M. the jury sent a handwritten note to the judge requesting a transcript of Dr. Foster's testimony. Calling counsel into chambers, the judge advised them of the communication and of his intended response denying the request; first, because as he announced, no copy of the testimony was available and it would take the reporter several hours to write it up; and second, even if a transcript were available, because it "would only complicate things for the jury" for the

court "to give  *  *  *  bits of evidence or the testimony of one witness or something of that kind [which] I just can't see  *  *  *." Although defense counsel indicated to the judge that furnishing the transcript would be permissible, he suggested no other alternatives and the judge indicated he would send the following reply, which was communicated over defendant's objections:

> "Ladies and gentlemen of the Jury: You have heard the evidence and the instructions of the court with respect to the law in this case. A transcript of Dr. Foster's testimony is not available and you cannot be furnished with same. Please continue your deliberations on your verdicts. Robert E. Higgins, Trial Judge."

At 2:30 A.M. on November 17, 1972, the judge reconvened the court and in the presence of defendant and counsel inquired of the foreman whether or not, and "without revealing any numerical division" among them, there existed in the foreman's belief a possibility that the jurors could reach a verdict in this case. The foreman responded that "Some of the people feel there is and some feel there isn't." Then, without objection from anyone, the court delivered the following instruction suggested for use by the supreme court in *People v. Prim*, 53 Ill.2d 62, 75-76, 289 N.E.2d 601 (1972):

> " 'The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.' "

At 3:30 A.M., the judge called the jury back into open court and inquired whether they were a deadlocked jury. Eleven jurors initially responded affirmatively but one replied that he did not think so, and asked if they could have an additional half-hour to deliberate, saying "I think we are close and we realize we are." The judge thereupon inquired of each of the other jurors as to whether he or she concurred in this sug-

gestion. Six answered "yes," that they did; one answered "no"; five stated they were willing to try. Without further comment or instruction from anyone, the jury was retired for further deliberations and at 4:15 A.M. returned its verdicts.

Defendant, relying principally upon the cases of *United States v. Bass*, 490 F.2d 846 (5th Cir. 1974), *United States v. Thomas*, 449 F.2d 1177 (D.C. Cir. 1971), and *United States v. Rogers*, 289 F.2d 433 (4th Cir. 1961), argues that the judge's "continued polling" of the jury "until they agreed to reach a verdict within a half-hour" amounted to a coercive "Allen-plus" or "Prim-plus" or "dynamite" instruction which caused a compromise verdict from the jury in violation of defendant's sixth-amendment rights. He also argues, in support of his prayer for a new trial, that the court erred in denying the request of the jury for a transcript of the testimony of Dr. Foster. We reject both contentions.

■■ We recognize that every accused has a right to have his guilt found, if at all, only by a unanimous verdict of a jury of his peers, and that any undue intrusion by the trial judge upon the exclusive province of the jury is error. We also recognize, however, that a trial judge has a duty to lend guidance to a jury on governing principles of law. In the case of deadlocked juries, the line separating proper judicial guidance from improper coercion is often fine and imprecise, and has been troublesome. Any effort by the judge, under the guise of guidance, to coerce a verdict by prodding even a single juror into surrendering views conscientiously held has been condemned as diluting the requirements of unanimity. *United States v. Thomas.*

The *Allen* instruction, often called the "dynamite" charge, refers to a supplemental instruction first approved for use in *Allen v. United States*, 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 (1896), to encourage deadlocked juries to reach a verdict. More recently, as in *Thomas*, many courts have warned that the *Allen* charge "approaches the limits" of what is acceptable in suggesting to jurors the desirability of agreement and the avoidance of the necessity of another trial. Any exhortations or pressure beyond that instruction have been condemned as excessive, or "Allen-plus." Thus, in *United States v. Rogers*, the court indicated that any such supplemental charge which instructs the jury of its duty to agree or the requirement for unanimity, must contain the "ameliorating admonition" that no juror should yield his conscientious conviction. It was a defect in this respect that resulted in the reversal in *United States v. Bass*.

■■ In 1972, the Illinois Supreme Court in *People v. Prim* made note of the growing criticism of the *Allen* charge, and of the warnings as to its appropriate use, and after a thorough study of the matter, set forth an appropriate supplemental instruction for use by the trial courts in this

State when faced with deadlocked juries. The instruction approved there was the one given in the case at bar, without objection, and we believe the record shows that it was given in circumstances contemplated by the supreme court's directive. The further argument is made, however, that "under the totality of the circumstances," the conduct of the judge after giving this instruction, in later reconvening the court after 13 hours of deliberation for the purpose of ascertaining whether there existed any probability of agreement from further deliberation was "Prim-plus" and therefore excessive and coercive.

■■ In *Prim*, the supreme court referred with approval to the Standards Relating to Trial By Jury promulgated by the American Bar Association Project on Minimum Standards for Criminal Justice. These contemplate at paragraph 5.4 (b) that the court should not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals, and at (c), that following delivery of the supplemental instruction, the jury may subsequently be discharged without having agreed upon a verdict *if it appears that there is no reasonable probability of agreement.* Accordingly, 1 hour and 20 minutes following the giving of the supplemental *Prim* instruction here, and so as not to require deliberation for an unreasonable interval, the judge reconvened the court to ascertain whether there was any "reasonable probability of agreement" or whether the jury should be discharged. He attempted to ascertain that circumstance simply by asking the jurors. The suggestion that a verdict was possible with further deliberation and the request for an additional half-hour came from a juror, and then other jurors by their subsequent concurrences, inspired the reasonable expectation that a verdict was possible. In returning them for further deliberation on their own suggestion, the court did not impose any time limitation or give further instruction.

■■■ Cases submitted to juries vary in their complexity, and therefore, the question of what interval of time it is reasonable to permit the deliberations to continue in any case is a matter peculiarly within the discretion of the trial judge. (*People v. Daily*, 41 Ill.2d 116, 242 N.E.2d 170 (1968); *People v. Van Dyke*, 106 Ill.App.2d 411, 245 N.E.2d 324 (2d Dist. 1969).) We are not persuaded that the court's inquiry of each of the jurors as to whether a verdict was possible through any further deliberation and its grant of the request for further time is fairly characterized as "Prim-plus," or in any manner coercive, or that it suggested to any juror that he should yield his convictions.

The case of *People v. Jackson*, 26 Ill.App.3d 618, 325 N.E.2d 450 (1st Dist. 1975), which defendant cites, is distinguishable. In that case, the trial court gave a supplemental instruction which was not the approved

*Prim* instruction, but the instruction brought for review in *Prim.* It advised the jury that in the event of a mistrial, the case would have to be retried and that there was no reason to believe it could be done any better or more exhaustively or could be submitted to persons more competent. In *Thomas,* such an instruction was suggested to be misleading and improper. Moreover, the appellate court reversed in *Jackson* because the supplemental instruction was given without any indication that the jury was deadlocked or unable to agree. In the case at bar, the supplemental instruction was not given until after the foreman indicated a division of opinion on the question of whether a verdict was possible.

■■ The issue of whether the transcript of Dr. Foster's testimony should have been given the jury on its request was a matter within the discretion of the circuit court. (*People v. Pierce,* 56 Ill.2d 361, 308 N.E.2d 577 (1974).) Where trial courts have refused such requests under the mistaken belief that they have no discretion in the matter, such refusals have been held error. (*People v. Queen,* 56 Ill.2d 560, 310 N.E.2d 166 (1974); *People v. Jackson.*) In the latter case, it was indicated that the existence of a discretion imposes a duty upon the part of the court to determine whether a review of the requested testimony by the jury would assist it in its proper deliberations or be hurtful, so that to deny a jury's request on the assumption that the court had no discretion to honor it is error. In the case at bar, it is apparent that the judge did knowingly exercise his discretion and made a determination, quite apart from any questions as to its ready availability, that providing the transcript would be hurtful. We find no basis for disturbing that exercise of discretion.

Accordingly, the judgment of the circuit court is affirmed.

ALLOY and STENGEL, JJ., concur.