THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JACKIE HANCOCK, Defendant-Appellant.

First District (1st Division)   No. 80—0901

Opinion filed November 29, 1982.

McGLOON, J., dissenting.

Randolph N. Stone, of Stone & Clark, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Rhoda W. Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Jackie Hancock (defendant) was found guilty on two counts of armed robbery. He was sentenced to 15 years. He appeals.

In this court, defendant raises a variety of issues. In an effort to attain an orderly ruling thereon we will first state a summary of the evidence. We will augment this statement as required in considering the various issues raised.

On June 27, 1978, about 11:30 a.m., a bartender and four patrons were in a well-lighted tavern. The doors and a window were all open. A person identified as defendant entered with an automatic pistol drawn. He stated it was a "stickup" and he wanted everyone's wallet. One patron threw his wallet on the floor. The others placed them on the bar. The bartender put some $45 on the bar.

At that point, Rose Carter, a friend of the bartender, entered. She testified that defendant seized her and pulled her in front of him. She struck at the defendant but the bartender cautioned her to obey. Defendant took the money and required all persons to enter the bathroom. This lasted from three to five minutes. One witness was two feet from the defendant.

At trial there were six in-court identifications of defendant, by all four of the patrons (Wright, Peters, Monroe and Martin), by Rose Carter and by the bartender. In addition, two of the patrons (Wright and Peters) identified defendant at a police lineup. Two photographs of this lineup were received in evidence after testimony by the two witnesses concerning them. In addition, two of the patrons (Peters and Martin), Rose Carter and the bartender, also testified each had made a photographic identification of the defendant from an album of photographs shown to them by the police.

Defendant called Geraldine Gilliam. She is defendant's cousin. She

testified defendant was at her home about 7 o'clock on the morning in question. She left for work shortly after 8 a.m. She attempted to call her home about 9 a.m. and could not get the line until about 11 a.m. Defendant also called Ernestine Gilliam, a sister-in-law of defendant's mother. She testified defendant called her at 10:30 on the morning in question and said he was coming "to paint some burglary bars for me and put them up." Defendant came to her home about 11:30 a.m. and remained until 12 o'clock.

Defendant testified he went to his mother's home about 6 a.m. He left the house for a short time about 9 a.m. only to buy some cigarettes. He tried to reach a lady named Linda Mellis, a social worker at a hospital where his wife had gone. About 11:30 he went to the home of Ernestine Gilliam. He talked to her about installing some burglary bars. She told him she would have the money shortly and he agreed to do the work. Defendant testified he had never been in the tavern in question and he categorically denied he had ever robbed anyone there.

I

■ Defendant moved *in limine* to exclude evidence of his prior convictions for theft of services in 1977 and for armed robbery in 1973. The trial judge denied the motion and certified copies of these convictions were received. Defendant urges this was an abuse of discretion.

Since *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, admission of prior convictions has been held proper in the exercise of sound discretion of the trial court. (*People v. Washington* (1973), 55 Ill. 2d 521, 523, 304 N.E.2d 276.) The problem to be considered by the trial court and to be reviewed by this court involves a comparison of the probative value of the prior conviction "against the potential for unfair prejudice which might result." (*People v. Spates* (1979), 77 Ill. 2d 193, 205, 395 N.E.2d 563.) The crucial factors are set forth in *Spates* and *Montgomery*.

In the instant case we find the trial court exercised its discretion with care and came to the correct result. The crimes of theft of services and armed robbery relate directly to credibility and veracity. (*People v. Ridley* (1975), 25 Ill. App. 3d 596, 601, 323 N.E. 2d 577, *appeal denied* (1975), 58 Ill. 2d 598.) The trial judge is given wide latitude in the exercise of his discretion in this situation. (*People v. Fleming* (1980), 91 Ill. App. 3d 99, 108, 413 N.E.2d 1330, *appeal denied* (1981), 83 Ill. 2d 571.) We find no breach of discretion in this regard.

## II

■ On cross-examination of the defendant, the State inquired: "Were you ever on the phone with Mrs. Mellis [Linda Mellis] that morning of the 27th?" The defendant answered, "No, I wasn't." The State then inquired as to whether defendant had told an assistant State's Attorney and an investigator he had received a telephone call from Linda Mellis; and whether that call took approximately one hour and 15 minutes. The defendant categorically denied both of these statements.

On rebuttal, the State called Assistant State's Attorney Quinn. He testified he interviewed the defendant shortly after arrest. Defendant told him he had received a telephone call about 10:45 a.m. on the day in question. Defendant was at his mother's home. The caller was Linda Mellis, a psychiatric social worker at a hospital. She and defendant spoke about the defendant's wife. This conversation lasted one hour and 15 minutes.

The State also called Linda Mellis in rebuttal. She testified she did not speak to the defendant on the date in question, June 27, 1978. The witness specifically recalled on that particular day she and her husband had doctor's appointments at 10 a.m.

■ Defendant now contends the testimony of the two rebuttal witnesses was prejudical and improper. Defendant made no objection to the rebuttal testimony given by either of these witnesses at the time they testified. After final arguments had been completed and after the jury retired, counsel for defendant for the first time told the court he wished to object to the testimony of Linda Mellis on the ground that it was not proper rebuttal. The trial court overruled this objection and stated that the rebuttal was properly admissible. Since no timely objection to this rebuttal evidence was "made at the time of admission" the point, if any, is therefore waived. *People v. Baynes* (1981), 88 Ill. 2d 225, 230, 430 N.E.2d 1070.

Even assuming the absence of waiver on this strong ground, we conclude the admission of this rebuttal evidence was entirely proper within the exercise of sound discretion by the trial court. (*People v. Waller* (1977), 67 Ill. 2d 381, 387, 367 N.E.2d 1283.) We find no breach of discretion in this regard.

## III

Defendant filed a motion to suppress identification testimony. The motion alleged the identification witnesses did not have an adequate opportunity to view the person who robbed them; after the robbery the individuals gave descriptions of the offender which substantially

differed from defendant's description; identification was made by photographs containing no other persons who resembled the defendant; the photographic identifications were made by the witnesses in the presence of each other; and in the lineup defendant was identified by two people who were in the presence of each other so that the identification evidence should be suppressed. Defendant contends the trial court violated his right to due process by refusing to permit relevant questions regarding reliability of the identification at the pretrial hearing on the motion to suppress.

Defendant relies primarily upon *People v. Robinson* (1970), 46 Ill. 2d 229, 263 N.E.2d 57. There, a conviction was reversed because the trial judge arbitrarily curtailed the right of defendant to make a showing of suggestive matters which occurred during the identification process. (46 Ill. 2d 229, 232-33.) We do not find *Robinson* applicable here.

In support of the motion to suppress the identification, defendant called the two patrons of the tavern who had participated in the lineup (Wright and Peters) and also Rose Carter. On the motion to suppress, the trial court ruled defendant should proceed to make proof in support of his petition regarding any improper or suggestive police conduct. However, the trial court also ruled that the hearing of evidence with reference to an adequate opportunity of the witnesses to view the offender should be reserved to hearing of the case in chief. Counsel for defendant proceeded to examine these three witnesses in connection with his motion to suppress. After this hearing the trial judge denied the motion.

We find no reversible error in this regard. The record shows this case was most ably presented to the jury by counsel for defendant. Each and all of the witnesses who identified defendant in court, the lineup identifications and the photographic identifications were subjected to able and complete cross-examination. All of these contentions thus made by defendant regarding the identification were completely brought out before the jury.

The evidence shows clearly that the tavern in question was well lighted. The front and rear doors, and a window were all open. The holdup took place about 11:30 a.m. There is no evidence to the contrary. It is also agreed and verified that the incident lasted from three to five minutes. The defendant spoke to Rose Carter. At various times all of the persons in the tavern were very close to the defendant. Two witnesses testified the defendant urged them to "take a good look" at him. Beyond any reasonable doubt there was ample and adequate opportunity for each and all of the identification witnesses to see and

observe the defendant fully.

■ As regards the photographic identification, the witness Carter went to the police station about one hour after the robbery. She looked through seven albums of photographs taken by the police. She picked out defendant's picture. On the motion to suppress, she testified the defendant's name appeared below his picture together with a number. On cross-examination during the case in chief, she stated she could not remember whether or not defendant's name appeared on the photo. There was testimony by other witnesses that the name did appear below the picture.

The record also shows a police officer accompanied Carter back to the tavern. She testified she did not talk to the police any further about her photographic identification. The officers showed the album individually to each of the remaining identification witnesses. The officer could not remember at trial whether or not he told the other witnesses that Carter had identified one of the photographs. In addition, several of the identification witnesses were strongly cross-examined by counsel for defendant regarding the description of the offender, allegedly given to them by the police. Theodore Peters, one of the witnesses at the pretrial hearing, testified the album of photographs was shown to him by the police when he was standing outside the tavern. Similarly, Carter testified she was alone when the police officer showed her the album of photographs.

Based upon the entire record before us, we cannot find that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971, cited in *People v. Allender* (1977), 69 Ill. 2d 38, 42, 370 N.E.2d 509.

■ On the issue of the lineup identifications, the police conducted a lineup on July 4, 1978. The only two witnesses available for the lineup were Theodore Peters and Thomas Wright. Both of them testified they were put in a closed room together before the lineup. They did not speak to each other at the lineup. In fact, they were not together when they viewed the lineup. The witness Wright never saw the photographic albums. The witness Peters selected the defendant's picture from a police album. Pictures of the lineup were exhibited to both of these witnesses in open court. They identified the pictures and identified the defendant and his position in the lineup. "The burden of proving that the lineup procedure was unfair was upon the defendant." (*People v. Brown* (1972), 52 Ill. 2d 94, 100, 285 N.E.2d 1.) We find beyond reasonable doubt that the lineup procedure was not un-

necessarily suggestive or conducive to mistaken identification.

In the case before us, in-court identification of the defendant by six credible witnesses would seem to eliminate any risk of misidentification. However, the courts of this jurisdiction have carefully considered the various tests which should be applied and satisfied before it can be concluded that there is no reasonable likelihood of misidentification. These tests are well set out in *People v. McTush* (1980), 81 Ill. 2d 513, 521, 410 N.E.2d 861:

> "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [Citations.] This court has added another factor in determining whether a witness' identification has an independent origin: 'any acquaintance with the suspect prior to the crime.' *People v. Blumenshine* (1969), 42 Ill. 2d 508, 514."

■ Finally, to close the matter, it has been repeatedly held that any possible suggestibility in connection with the photographic identification and the lineup identification is rendered irrelevant where the in-court identification of the defendant has an adequate origin independent of the photographic and lineup procedures. (See *People v. Allender* (1977), 69 Ill. 2d 38, 43; see also *People v. McTush* (1980), 81 Ill. 2d 513, 523, and cases there cited.) In our opinion the adequate, independent origin has been established beyond any reasonable doubt.

## IV

Defendant urges there is a reasonable doubt as to his guilt. He takes the position that the testimony of his cousin Geraldine Gilliam and his family member Ernestine Gilliam is adequate to overcome the massive and convincing evidence supplied by the eyewitnesses.

■ We find from this record that defendant himself was thoroughly discredited. The rebuttal evidence above summarized shows that defendant told the investigators he had a telephone conversation with a social worker which lasted 1 hour and 15 minutes on the morning of the armed robbery. On the contrary, the social worker, a reputable witness, not discredited or impeached in even the slightest respect, testified she did not speak to defendant on that day. She supported her testimony by the statement that she remembered the specific day because she and her husband had appointments with the doctor on that date. Insofar as the witness Geraldine Gilliam testified

her telephone line at home was busy about that time for close to two hours; her testimony is simply irrelevant to any alibi. As for Ernestine Gilliam, she testified defendant told her he was coming to paint and install some burglary bars. Defendant testified the work had not been done and he agreed to do it on a later date. It seems clear that the attempted alibi was weak and thoroughly overcome by the overwhelming identification testimony. The issues raised by defendant do not affect the positive identifications but simply raise an issue of credibility for the jury to decide.

As we view this entire record, it presents simply an issue of credibility for resolution by the jury. It has been repeatedly held that, "the jury had no obligation to believe defendant's alibi evidence." (*People v. Tennant* (1976), 65 Ill. 2d 401, 412, 358 N.E.2d 1116, *cert. denied* (1977), 431 U.S. 918, 53 L.Ed. 2d 229, 97 S. Ct. 2184; *People v. Jones* (1980), 82 Ill. App. 3d 386, 401, 402 N.E.2d 746, *appeal denied* (1980), 81 Ill. 2d 596.) In this type of situation this court may "not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt." (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.) On the contrary, our examination of the record convinces us that the verdict of the jury is most strongly supported by the evidence beyond reasonable doubt to the point of being overwhelming.

## V

■ The trial court read to the jury all of the 11 written instructions. The jury then retired. Counsel for defendant then immediately spoke to the court concerning an objection to rebuttal evidence not previously made. After some colloquy the court overruled this objection. The jurors began their deliberation about 1:30 p.m. About 5 p.m. the jury informed the bailiff they had reached a verdict. It was then realized for the first time that the jury had not been given the written instructions and the verdicts to take with them to the jury room.

Defense counsel objected but the trial court ordered the bailiff to take the instructions and verdicts to the jury. This took place shortly after 5 p.m. About 5:30 there was a verdict and defendant's counsel moved for a mistrial because the jury had been permitted to deliberate without the written instructions. The court denied this motion. The individual jurors were all polled without incident. Defendant contends this incident constitutes reversible error.

All of the written instructions appear in the record. All of them are taken from Illinois Pattern Instructions. The rules of the supreme court provide:

> "Instructions in criminal cases shall be tendered, settled, and given in accordance with section 2—1107 of the Code of Civil Procedure, but substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." (87 Ill. 2d R. 451(c).)

The pertinent statute, section 2—1107 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1107(b)), previously section 67 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 67(2)), provides:

> "The original written instructions given by the court to the jury shall be taken by the jury to the jury room ***."

Thus, the disposition of the written instructions during jury deliberations, required in civil cases as a matter of statutory compliance, is made applicable to criminal cases by rule of the supreme court.

Defendant cites and depends upon a number of cases which can immediately be differentiated. In each of these cases the trial judge instructed the jury as to the law only in oral instructions. No written instructions were prepared, given to the jury or filed. (*People v. Callopy* (1934), 358 Ill. 11, 12, 192 N.E. 634; *People v. Kelly* (1931), 347 Ill. 221, 222-23, 179 N.E. 898; and *People v. Grandstaff* (1926), 324 Ill. 70, 73-74, 154 N.E. 448.) In addition, in *Ellis v. People* (1896), 159 Ill. 337, 338, 42 N.E. 873, the trial court read written jury instructions but supplemented them with a series of oral instructions. The remaining case cited by defendant is *Hart v. State* (1926), 21 Ala. App. 621, 111 So. 47.

In our opinion, *Hart* should not be followed by this court for these reasons: the opinion was filed over 50 years ago; also, the situation in *Hart* is different from the instant case. There, written instructions were read to the jury by the trial judge. These instructions were never given to the jury, either before or during their deliberations. The matter was brought to the attention of the court only on defendant's motion for new trial. 21 Ala. App. 621, 622, 111 So. 47, 47.

In the instant case, the attention of the trial judge may possibly have been diverted by the colloquy with counsel for defendant concerning a tardy objection to rebuttal evidence. Be that as it may, when the matter was brought to the attention of the trial judge he acted immediately. The instructions were forthwith given to the jury for their information without any further communication to them. No one knows the nature of the jury deliberation or the tentative result reached by them when they asked for the instructions. In fact, we may readily assume that the verdicts were delivered to the jury only with the written instructions.

The majority of the *Hart* court summarily reversed the judgment because the written instructions were never given to the jury. There is a strong dissent on the grounds that this ruling would enable a defendant "through skillful or careless counsel, to procure a new trial in practically every case of conviction." (21 Ala. App. 621, 622, 111 So. 47, 48 (Rice, J., dissenting).) The dissent pointed out the atmosphere of confusion which may exist during retirement of the jury. The dissent added, it "is perfectly clear that the said charges were left out of the jury room through nobody's fault, but through an inadvertent oversight on the point of all concerned." (21 Ala. App. 621, 623, 111 So. 47, 48 (Rice, J., dissenting).) Finally, the dissenting judge stated this matter "does not affirmatively appear to have injured [defendant's] rights, and which arose out of no adverse ruling of the trial court." 21 Ala. App. 621, 623, 111 So. 47, 48.

Thus, it appears that we have no Illinois authority on the precise point here involved. Our own research has led us only to a civil case, *Kunz v. Nelson* (1938), 94 Utah 185, 76 P.2d 577. There, in a trover action involving certain crops, the trial court read his instructions from notes. Counsel for defendants assumed the judge was reading written instructions which would be given to the jury. However, no written instructions were given and counsel for defendants immediately objected. The court cited a number of authorities and held that the duty of the court to instruct in writing only was mandatory and allowed a new trial. (94 Utah 185, 200-01, 76 P.2d 577, 584.) The case is factually different from the instant case. Here, the written instructions were in fact furnished to the jury before they had completed their deliberations and signed the verdicts.

In the case before us, particularly in view of the strength of the evidence of guilt, we are impelled to conclude that any conceivable error arising from this matter was harmless. (*People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254.) We find nothing in this record to indicate that this defendant was prejudiced in any manner by this trial incident. None of the 12 jurors raised any point or indicated any problem or lack of knowledge when the jury was polled. In this type of situation, it is not within the province of a reviewing court to seek out and validate any claim of prejudice which is "founded on mere conjecture." (*People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857.) We "can safely conclude that a trial without this error would produce no different result." *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.

The judgment is accordingly affirmed.

CAMPBELL, P.J., concurs.

JUSTICE McGLOON, dissenting:

I do not dispute the facts as set out by my colleagues in the majority opinion. However, I must differ with my colleagues on their interpretation of section 67 of the Civil Practice Act. That section is unambiguous and provides that "[t]he court *shall* give instructions to the jury only in writing." (Ill. Rev. Stat. 1981, ch. 110, par. 67.) The statutory requirement that jury instructions must be in writing has remained unchanged since 1907. (Ill. Laws 1907, at 458, secs. 72-76; Ill. Rev. Stat. 1933, ch. 110, par. 191; Ill. Rev. Stat. 1935, ch. 110, par. 195; Ill. Rev. Stat. 1937, ch. 110, par. 191; Ill. Rev. Stat. 1941, ch. 110, par. 191; Ill. Rev. Stat. 1955, ch. 110, par. 67; Ill. Rev. Stat. 1973, ch. 110, par. 67.) Thus, the legislature has clearly and consistently provided that the court shall instruct the jury in writing. Although the statute does not specify when the written instructions are to be given, the requirement that the instructions "shall be taken by the jury to the jury room" demonstrates the intent on the part of the legislature that the jury have access to the instructions during its deliberations.

*Ellis v. People* (1896), 159 Ill. 337, 42 N.E. 873, and *People v. Grandstaff* (1926), 324 Ill. 70, 154 N.E. 448, construe similar versions of the statute. In *Ellis*, the court stated that in criminal cases, where the accused is not presumed to waive any of his legal rights, the statute requiring written instructions must be strictly complied with. Strict compliance necessarily dictates that the jurors receive written instructions prior to reaching their verdict. In the case at bar, the jury indicated that they had reached its verdict by signalling the bailiff. The following colloquy between the defense counsel and the court further demonstrates that the jury had reached its verdict without the benefit of written instructions:

> "MR. STONE: I think it is clear that the jury had already reached their verdict before the instructions were sent back.
>
> THE COURT: I have no quarrel with the representation, Mr. Stone."

Furthermore, my interpretation of *People v. Grandstaff* (1926), 324 Ill. 70, 154 N.E. 448, differs from that of my colleagues. I could find no reference to whether or not written instructions were prepared, given to the jury, or filed. In *Grandstaff*, a burglary conviction was reversed due to the State's failure to bring the defendant to trial within four months, however, the Illinois Supreme Court stated that giving oral instructions to the jury, in violation of the Practice Act,

was a procedural error which would cause a judgment to be reversed.

Few Illinois cases address the issue of whether a violation of statutory provisions that jury instructions be in writing constitutes reversible error. In light of the absence of Illinois case law, it is necessary to look to our sister States for their interpretation of similar statutes. I find the majority opinion of *Hart v. State* (1926), 21 Ala. App. 621, 111 So. 47, and *Kunz v. Nelson* (1938), 94 Utah 185, 76 P.2d 577, to be persuasive on this issue.

In *Hart,* the court of appeals reversed a defendant's conviction because the requested instructions were read to the jury but were not taken by the jury upon their retirement, as required by a statute similar to the Illinois statute. The court concluded that "[w]hen there is a plain mandate of the statute, a failure to observe such cannot be said as a matter of law to be error without injury. The Legislature has fixed it as being a necessary part of a trial before a jury, and the courts must abide by it." *Hart v. State* (1926), 21 Ala. App. 621, 622, 111 So. 47, 47.

The instant case is unlike *Hart* in that after it was discovered that the jury had reached its verdict without receiving written instructions, defense counsel immediately moved for a mistrial thereby preserving this issue for appeal. Had counsel failed to promptly object and move for a mistrial, his failure would be construed to be a waiver by agreement of counsel. (See *Johnson v. Shell Oil Co.* (1970), 131 Ill. App. 2d 1032, 264 N.E.2d 278 (abstract of opinion).) However, the above distinction strengthens the defendant's case.

The supreme court of the State of Utah has held that the failure to reduce all substantial instructions to writing for the use of the jury in the jury room is itself reversible error. (*Kunz v. Nelson* (1938), 94 Utah 185, 201, 76 P.2d 577, 584.) In *Kunz,* the court emphasized that it could not inquire as to whether the failure to furnish the jury with written instructions was in fact actually prejudicial, stating, "[I]t will be irrebuttably presumed to be prejudicial. The requirement to instruct in writing does not mean for the purpose of the record only, but for the purpose of use by the jury in the jury room ***." (94 Utah 184, 201, 76 P.2d 577, 584.) I find the reasoning in *Kunz* to be applicable to the case at bar.

The majority holds that any conceivable error arising from this matter was harmless. I cannot agree.

The sixteen instructions (including the verdict forms) covered sophisticated and abstract legal concepts such as: burden of proof, consideration of evidence and reasonable inferences drawn therefrom, the elements of the offense charged, presumption of innocence, reason-

able doubt, the weight to be given the testimony heard, inconsistent statements, what the State must prove, and the limitation of evidence regarding prior convictions for impeachment purposes only. While the case is not complex in that there was no scientific evidence presented or expert testimony heard, the jurors were denied the opportunity to review the principles of law and to apply those principles to the facts of the case and arrive at the proper verdict. As stated in *People v. Plum* (1976), 44 Ill. App. 3d 922, 925, 358 N.E.2d 1235, 1237, citing *People v. Anthony* (1975), 30 Ill. App. 3d 464, 467, 334 N.E.2d 208:

> "The function of instructions is to convey to the jurors the correct principles of law applicable to the facts so that the jury can arrive at a correct conclusion according to the law and evidence. [Citation.] Where the evidence is conflicting, it is even more important, for a proper consideration of the facts, that the jury be properly instructed."

Here, the jury was not properly instructed in accordance with the plain mandate of the statute. The essential function of the instructions was vitiated by the trial court's failure to comply with the statute thereby prejudicing defendant. Moreover, the error cannot be cured by delivering instructions after submission of the case to the jury for deliberation. *Vanmeter v. True* (1894), 16 Ky. L. Rep. 320 (abstract of opinion).

I therefore conclude that defense counsel's objection to submitting instructions to the jury after it had reached a verdict was well-founded. The trial court should have granted defendant's motion for a new trial.