**UNITED STATES of America ex rel. Jackie HANCOCK, Petitioner,**

v.

**Warden Steven McEVERS, Respondent.**

No. 85 C 2163.

United States District Court, N.D. Illinois, E.D.

Oct. 11, 1985.

Jackie Hancock, pro se.

Neil F. Hartigan, Atty. Gen. by Jack Donatelli, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

BUA, District Judge.

Jackie Hancock ("petitioner") was charged with armed robbery in the Circuit Court of Cook County, Illinois. After a jury trial, he was found guilty and sentenced to 15 years imprisonment. The Illinois Appellate Court affirmed the conviction. *People v. Hancock*, 110 Ill.App.3d 953, 443 N.E.2d 226, 66 Ill.Dec. 543 (1st Dist.1982).

After exhausting his state remedies, Hancock filed a petition for a writ of habeas corpus with this Court claiming that: (1) the trial court erred in denying defense counsel's motion for a mistrial when the jury began deliberations without written instructions; (2) the trial court abused its discretion when it admitted evidence of petitioner's prior convictions; (3) the trial court abused its discretion when it overruled an objection to certain rebuttal testimony; (4) the State failed to prove petitioner guilty beyond a reasonable doubt; and

(5) the trial court denied defendant's motion to suppress identification testimony and curtailed questioning regarding the reliability of the identification at a pretrial hearing in violation of petitioner's due process rights. In response, the State ("respondent") has filed a motion to deny the writ.

After a careful review of the factual determinations of the Illinois Appellate Court and the Cook County Circuit Court, the Court grants respondent's motion to deny the writ. The Court's jurisdiction rests upon 28 U.S.C. § 2254.

## I. SCOPE OF REVIEW

Regarding the proper scope of review by a federal court in a habeas proceeding, this Court's analysis in *United States ex rel. Banks v. McGinnis*, 563 F.Supp. 819 (N.D. Ill.1983), *aff'd*, 746 F.2d 1482 (7th Cir.1984) (unpublished order), sets forth the proper rule of a federal court. From that analysis, it is clear that a federal court on habeas must apply the "presumption of correctness" to state appellate court underlying factual determinations in mixed questions of law and fact, although it may draw different conclusions as to those facts as found. On the other hand, the federal court need not be bound by those underlying factual determinations, if it concludes that they are not "fairly supported by the record." *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981); *see also Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). Nor need the federal court apply the presumption if one of the first seven statutory exceptions to 28 U.S.C. § 2254(d) is found to exist or if the petitioner establishes by "convincing evidence" that the state court's findings are clearly erroneous. 28 U.S.C. § 2254(d).

The Court agrees with the state appellate court's underlying factual determinations. Since petitioner has not rebutted these determinations with "convincing evidence" and since none of the statutory exceptions exist, the Court will apply the

"presumption of correctness" to these findings and apply the law accordingly.

## II. PETITIONER'S CLAIMS

### 1. *Jury Instructions*

Petitioner objects because the jury was not immediately provided written copies of the jury instructions when they began deliberation. The following relevant facts were set out by the Illinois Appellate Court and are entitled to the presumption of correctness under 28 U.S.C. § 2254(d).

> The trial court read to the jury all of the eleven written instructions. The jury then retired. Counsel for defendant then immediately spoke to the court concerning an objection to rebuttal evidence not previously made. After some colloquy the court overruled this objection. The jurors began their deliberation about 1:30 p.m. About 5 p.m. the jury informed the bailiff they had reached a verdict. It was then realized for the first time that the jury had not been given the written instructions and the verdicts to take with them to the jury room.
>
> Defense counsel objected but the trial court ordered the bailiff to take the instructions and verdicts to the jury. This took place shortly after 5 p.m. About 5:30 there was a verdict and defendant's counsel moved for a mistrial because the jury had been permitted to deliberate without the written instructions. The court denied this motion. The individual jurors were all polled without incident. Defendant contends this incident constitutes reversible error.
>
> All of the written instructions appear in the record. All of them are taken from IPI....

443 N.E.2d at 231–32, 66 Ill.Dec. at 548–49. The Illinois Appellate Court found that the trial judge acted promptly to rectify the absence of written instructions:

> In the instant case, the attention of the trial judge may possibly have been diverted by the colloquy with counsel for defendant concerning a tardy objection to rebuttal evidence. Be that as it may,

when the matter was brought to the attention of the trial judge he acted immediately. The instructions were forthwith given to the jury for their information without any further communication to them. No one knows the nature of the jury deliberation or the tentative result reached by them when they asked for the instructions. In fact, we may readily assume that the verdicts were delivered to the jury only with the written instructions.

443 N.E.2d at 232, 66 Ill.Dec. at 549.

On these facts, the Illinois Appellate Court concluded, by a 2–1 majority that, since written instructions were furnished to the jury before they completed deliberation and signed the verdicts, any conceivable error was harmless and therefore Illinois law was not violated. The appellate court noted that no juror raised any point or indicated any problem or lack of knowledge when the jury was polled. 443 N.E.2d at 233, 66 Ill.Dec. at 550. Therefore, the appellate court found no prejudice in the record. *Id.*

■ The State argues that the petitioner is not entitled to habeas corpus relief on the grounds of waiver and failure to show a constitutional error. In a habeas corpus action, the state court must have the opportunity to apply constitutional principles and correct any constitutional error committed by the trial court. *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450 (7th Cir.1984). Therefore, the substance of a federal habeas claim must first be presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). In other words, the claim must have been presented in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim.

■ Just as the petitioner's state court argument in *Sullivan, supra,* was not

presented in such a way as to alert the state court to any constitutional due process ramifications, Hancock's state court arguments were not presented in such a way as to fairly alert the state court to the constitutional ramifications Hancock now claims exist. Hancock simply argued that the trial court erred in denying his motion for a mistrial. Like Sullivan, Hancock did not present this state court argument in the context of a federal constitutional claim, he never used the term "due process," and the opinion of the Illinois Appellate Court indicates that it discerned no due process implications.

Even though Hancock's due process claim arises out of the same factual circumstances as his state court claim, his state court claim presented an entirely separate legal issue. *See Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981). The state court, presented with a claim based upon the absence of written instructions when jury deliberations began, focused on whether these circumstances constituted reversible error. *People v. Hancock*, 443 N.E.2d at 231, 66 Ill.Dec. at 548. A due process inquiry is not constrained by these state law requirements. *Sullivan, supra*, 731 F.2d at 454. A due process inquiry in this context asks whether, as a matter of fundamental fairness, the state trial judge erred in denying the petitioner's motion for a mistrial under the circumstances presented. *Id.*

While Hancock's due process claims are based on errors he complained of in state court, the Court holds that under the circumstances of this case Hancock did not effectively alert the state court to the due process ramifications upon which he bases his habeas petition. Therefore, since Hancock has not attempted to meet the cause and prejudice requirements of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court holds that he has forfeited his right to raise his due process claims in federal court regarding the absence of written instructions at the beginning of jury deliberations. *Sullivan, supra*, 731 F.2d at 455.

▮▮▮ Even if the petitioner has not forfeited his due process arguments regarding the absence of written instructions, the Court finds that he failed to show constitutional error. This Court has found no authority for the proposition that failure to give written instructions constitutes constitutional error. The general rule is that the submission of written instructions is within the sound discretion of the court. *United States v. Holman*, 680 F.2d 1340, 1354 (11th Cir.1982); *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir.1973) (en banc). In *Holman*, the Eleventh Circuit Court of Appeals held that, in certain circumstances, the submission of tape recorded versions of jury instructions is proper and does not constitute error. 680 F.2d at 1354. *See also United States v. Watson*, 669 F.2d 1374 (5th Cir.1982). In *Silvern*, the Seventh Circuit Court of Appeals suggested that district courts consider whether the need for supplemental instructions may be reduced by sending into the jury room at the time the jury retires either a written copy or a tape recording of the complete instructions as given by the court. 484 F.2d at 883.

In light of *Holman* and *Silvern*, and in light of the Illinois Appellate Court's holding that no reversible error occurred regarding the written instructions, the Court concludes that no constitutional error occurred. This conclusion is bolstered by the state appellate court's finding that the jurors had sufficient knowledge of the charges and instructions based on the trial court's oral instructions. Therefore, the late entry of written instructions after the jury deliberations began did not prejudice the petitioner and did not constitute constitutional error or a due process violation.

### 2. *Prior Convictions*

▮▮▮ Hancock objects to the admission of evidence of his prior conviction for armed robbery and argues that it denied him a fair trial. According to the appellate court:

Defendant moved *in limine* to exclude evidence of his prior convictions for theft of services in 1977 and for armed rob-

bery in 1973. The trial judge denied the motion and certified copies of these convictions were received.

*People v. Hancock, supra,* 443 N.E.2d at 229, 66 Ill.Dec. at 547. The appellate court determined that the trial judge acted within his discretion because at trial Hancock took the stand and these crimes related directly to Hancock's credibility and veracity. *Id.* at 228, 66 Ill.Dec. at 546 (quoting *People v. Ridley,* 25 Ill.App.3d 596, 601, 323 N.E.2d 577 (1st Dist.), *leave to appeal denied,* 58 Ill.2d 598 (1975) ).

Trial rules regarding the admissibility of evidence in a state criminal trial are matters of state law. *United States ex rel. Searcy v. Greer,* 768 F.2d 906, 910 (7th Cir.1985). Violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. *Id.* Violations of state evidentiary rules may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Id.; see also Brinlee v. Crisp,* 608 F.2d 839, 850 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). In addition to *Searcy, supra,* the Seventh Circuit Court of Appeals has elsewhere recognized the well-settled principle that "[i]t is not the role of a federal habeas court to correct state-court errors.... Unless the claimed error amounted to a fundamental defect so great that it inherently resulted in a complete miscarriage of justice, the conviction should stand." *Cramer v. Fahner,* 683 F.2d 1376, 1385 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). In *Cramer,* the Seventh Circuit found that the admission of evidence in the state trial regarding petitioner's marijuana use, adultery, professional reputation for misconduct, and murder solicitations was not sufficient ground for habeas corpus relief.

In the present case, the Illinois Appellate Court found that the trial court did not abuse its discretion under Illinois law when it admitted Hancock's prior two convictions with a limiting instruction regarding their impact. While a finding by the state appellate court that no error occurred is not dispositive of the "fundamentally unfair" analysis, it is a strong factor mitigating against a finding that the state trial court's evidentiary ruling rendered the petitioner's trial fundamentally unfair. *United States ex rel. Searcy v. Greer, supra,* 768 F.2d at 910; *see also Corpus v. Estelle,* 571 F.2d 1378 (5th Cir.), *rehearing denied,* 575 F.2d 881, *cert. denied,* 439 U.S. 957, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978). Another factor in support of the fairness of petitioner's trial is the overwhelming evidence supporting the jury verdict of guilty. *People v. Hancock, supra,* 443 N.E.2d at 231, 66 Ill.Dec. at 549. In light of these factors, the Court holds that the admission of Hancock's prior convictions was proper under the state evidentiary rules and did not render his trial fundamentally unfair.

### 3. *Rebuttal Evidence*

■ Hancock claims that certain rebuttal testimony denied him a fair trial. The appellate court made these findings of fact:

On cross-examination of the defendant, the State inquired: "Were you ever on the phone with Mrs. Mellis [Linda Mellis] that morning of the 27th?" The defendant answered, "No, I wasn't." The State then inquired as to whether defendant had told an assistant State's Attorney and an investigator he had received a telephone call from Linda Mellis; and whether that call took approximately 1 hour and 15 minutes. The defendant categorically denied both of these statements.

On rebuttal, the State called assistant State's Attorney Quinn. He testified he interviewed the defendant shortly after arrest. Defendant told him he had received a telephone call about 10:45 a.m. on the day in question. Defendant was at his mother's home. The caller was Linda Mellis, a psychiatric social worker at a hospital. She and defendant spoke about the defendant's wife. This conversation lasted 1 hour and 15 minutes. The State also called Linda Mellis in rebuttal. She testified she did not speak to

the defendant on the date in question, June 27, 1978. The witness specifically recalled on that particular day she and her husband had doctor's appointments at 10 a.m.

Defendant made no objection to the rebuttal testimony given by either of these witnesses at the time they testified. After final arguments had been completed and after the jury retired, counsel for defendant for the first time told the court he wished to object to the testimony of Linda Mellis on the ground that it was not proper rebuttal. The trial court overruled this objection and stated that the rebuttal was properly admissible.

443 N.E.2d at 228–29, 66 Ill.Dec. at 546–47. The appellate court rejected Hancock's objection to the rebuttal testimony on two grounds. First, it held that Hancock waived his objection because it was untimely. Second, it concluded that the testimony was properly admissible within the trial court's discretion. 443 N.E.2d at 229, 66 Ill.Dec. at 547.

The general rule in Illinois is that an objection to the introduction of evidence must be made at the time of admission or it will be waived. *People v. Baynes*, 88 Ill.2d 225, 230, 58 Ill.Dec. 819, 430 N.E.2d 1070 (1981). In the present case, the appellate court found that the petitioner made no objection to the rebuttal testimony at the time the witnesses testified. *People v. Hancock, supra*, 443 N.E.2d at 229, 66 Ill.Dec. at 547. Defense counsel's objection came after final arguments were completed and the jury had retired. *Id.* Applying the presumption of correctness to the appellate court's findings, the Court finds no grounds on which to disturb the state court's finding of waiver as to the rebuttal testimony.

In addition, the Court holds that the petitioner has failed to meet his burden of showing that, if admission of the rebuttal testimony was error, his trial was thereby rendered fundamentally unfair. Following the analysis applied in the previous section on admission of petitioner's prior convictions, the Court finds support for its holding here in the appellate court's holding that the rebuttal testimony was properly admitted. Finally, the overwhelming weight of evidence supporting the jury verdict of guilty suggests that any prejudice to the petitioner caused by admission of the rebuttal testimony did not render his trial fundamentally unfair.

4. *Guilt Beyond A Reasonable Doubt*

■ Hancock argues that the State failed to prove him guilty beyond a reasonable doubt because the testimony of his cousin Geraldine Gilliam and his family member Ernestine Gilliam is adequate to overcome the massive and convincing evidence supplied by the eye witnesses. The appellate court made the following findings of fact:

We find from this record that defendant himself was thoroughly discredited.... Insofar as the witness Geraldine Gilliam testified her telephone line at home was busy about that time for close to two hours; her testimony is simply irrelevant to any alibi. As for Ernestine Gilliam, she testified defendant told her he was coming to paint and install some burglary bars. Defendant testified the work had not been done and he agreed to do it on a later date. It seems clear that the attempted alibi was weak and thoroughly overcome by the overwhelming identification testimony. The issues raised by defendant do not affect the positive identifications but simply raise an issue of credibility for the jury to decide.

443 N.E.2d at 231, 66 Ill.Dec. at 549. The appellate court concluded that "the verdict of the jury is most strongly supported by the evidence beyond reasonable doubt to the point of being overwhelming." *Id.*

The standard to be applied by a federal court on habeas review in assessing the sufficiency of the evidence supporting a state court conviction was set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979):

The applicant is entitled to habeas relief if it is found that upon the record evidence adduced at trial no rational trier of

fact could have found proof of guilt beyond a reasonable doubt.

The scope of habeas review being limited, the Court must not attempt to fully reevaluate guilt but instead must only determine if a rational fact finder could have found guilt beyond a reasonable doubt. Finally, 28 U.S.C. § 2254(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger, supra,* 103 S.Ct. at 851.

In this case, the trial court and appellate court both concluded upon the evidence adduced at trial that petitioner was proved guilty beyond a reasonable doubt. This finding is fairly supported by the record. Therefore, the Court believes it must be upheld.

### 5. *Identification*

Hancock objects to the photographic and lineup identifications as suggestive and untrustworthy. He concludes that the trial court's denial of his motion to suppress identification testimony constitutes reversible error. Hancock's motion to suppress identification testimony sets forth the following grounds: identification witnesses did not have an adequate opportunity to view the person who robbed them; after the robbery the individuals gave descriptions of the offender which substantially differed from the petitioner's description; identification was made by photographs containing no other persons who resembled the petitioner; the photographic identifications were made by the witnesses in the presence of each other; and in the lineup petitioner was identified by two people who were in the presence of each other so that the identification evidence should be suppressed.

Taking the first two grounds together, the reliability of an identification is determined under *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *See also United States ex rel. Hudson v. Brierton,* 699 F.2d 917 (7th Cir.1983), *cert. denied,* 464 U.S. 833, 104 S.Ct. 114, 78 L.Ed.2d 115.

The relevant factors in evaluating reliability are: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *accord Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253. In *United States v. Wisniewski,* 741 F.2d 138 (7th Cir.1984), the Seventh Circuit Court of Appeals found adequate opportunity to view the criminal when the witness observed the defendant face-to-face for ten to fifteen seconds. *Id.* at 144.

In the present case, it is clear that several, if not all six, of the witnesses had adequate opportunity to view Hancock at the time of the crime. The appellate court made the following findings of fact:

> The evidence shows clearly that the tavern in question was well lighted. The front and rear doors, and a window were all open. The holdup took place about 11:30 a.m. There is no evidence to the contrary. It is also agreed and verified that the incident lasted from 3 to 5 minutes. The defendant spoke to Rose Carter. At various times all of the persons in the tavern were very close to the defendant. Two witnesses testified the defendant urged them to 'take a good look' at him. Beyond any reasonable doubt there was ample and adequate opportunity for each and all of the identification witnesses to see and observe the defendant fully.

443 N.E.2d at 229–30, 66 Ill.Dec. at 547–48. In light of *Wisniewski* and the state appellate court findings, the Court will not disturb the reliability of the identifications on the first two grounds. *See also United States v. Davies,* 768 F.2d 893, 903 (7th Cir.1985) (identification upheld as reliable even though witness told police officers on the evening of the theft that the defendant was approximately 5′10″ whereas he was 5′3″ ).

 The third and fourth grounds address the suggestiveness of the photographic identification. The test is whether the photographic identification sessions were so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," thus violating the petitioner's right to due process under *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *See also United States v. Anderson,* 714 F.2d 684 (7th Cir.1983). With respect to an assessment of possible misidentification, the Court in *Simmons* offered several indicia of trustworthiness of such a photographic session, including the well-lighted setting of the robbery, the maskless state of the robber, the opportunity of the witnesses to observe the robbery for several minutes, the witnesses' isolation in viewing the photographs, the lack of evidence that witnesses were told anything about the progress of the investigation or were told that any particular subject displayed was under suspicion, the fact that all the witnesses unequivocally identified the defendant and, notwithstanding cross-examination, unhesitatingly re-identified the defendant at trial. *Simmons, supra,* 390 U.S. at 385–86, 88 S.Ct. at 971–72; *Anderson, supra,* 714 F.2d at 687.

In the present case, the Court has already upheld the appellate court's finding that the tavern was well lighted, 443 N.E.2d at 229, 66 Ill.Dec. at 547, and the record contains no reference to any mask or other object covering the petitioner's face. In addition, there is no evidence in the record that either Rose Carter or Theodore Peters were told anything about a suspect or the progress of the investigation. There is also no evidence that the witnesses were in each other's presence at the photographic identifications. On the contrary, Rose Carter testified that she was alone when the police officer showed her the album of photographs. 443 N.E.2d at 230, 66 Ill.Dec. at 548. Finally, in-court identification by six credible witnesses would seem to eliminate any risk of mis-identification. *Id.* In light of these findings by the state appellate court and supported on the record, the Court finds that the petitioner has failed to meet his burden of showing a very substantial likelihood of irreparable misrepresentation due to the photographic identifications under the factors set forth in *Simmons.*

 The fifth and final ground attacks the reliability of the lineup identification made by two witnesses, Peters and Thomas Wright. Applying the same factors set forth in *Simmons,* it is clear that factors concerning the adequate opportunity to observe the petitioner and his uncovered face are the same here and do not make the lineup identification unreliable. Regarding the witnesses' isolation in viewing the lineup, Peters and Wright testified that they were put in a closed room together before the lineup but did not speak to each other. 443 N.E.2d at 230, 66 Ill.Dec. at 548. In addition, they were not together when they viewed the lineup. *Id.* In light of these findings by the state appellate court and the remaining factors in *Simmons* being satisfied, the Court holds that the petitioner has failed to meet his burden of showing a substantial likelihood of irreparable misidentification due to the lineup identifications.

### III. CONCLUSION

For the reasons stated above, respondent's motion to deny the writ is granted.

IT IS SO ORDERED.